UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald STRAWSER,
Defendant-Appellant.

No. 83–1251.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1984.

Decided July 16, 1984.

As Amended July 24, 1984.

Richard Anderson, Kimberling City, Mo., for defendant-appellant.

Larry A. Mackey, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before ESCHBACH, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The defendant, Ronald Strawser, was convicted on November 8, 1983, of possession of 430 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The issue on appeal is whether the district court committed error in denying the defendant's motion to quash his prosecution based on his claim that the indictment violated the terms of an earlier plea agreement. We affirm.

I.

The defendant's arguments on appeal relate to two separate indictments for marijuana trafficking and the scope of a written plea agreement arising out of the first of those two indictments. Specifically, the first indictment concerns Strawser's activities on September 1, 1981. On that date, agents of the Illinois Division of Criminal Investigation and the United States Drug Enforcement Agency observed Strawser and four other individuals load fourteen bales of marijuana into a van parked outside a farmhouse near Andrew, Illinois. As the van departed, the arrests were made and 525 pounds of marijuana was seized. One of the individuals arrested with Strawser was carrying a briefcase containing $135,000 in currency and records of past marijuana sales. An additional 1,000 pounds of marijuana was discovered in the nearby farmhouse.

Strawser states that some fifteen days later, on September 16, 1981, he orally agreed to provide information regarding the location of an additional large quantity of marijuana, and in exchange, the government agreed to recommend a probationary sentence in the case then under investigation. On that same date, based on the information Strawser provided, agents searched a barn on the Andrew, Illinois premises and uncovered approximately 4,300 pounds of marijuana.

On September 29, 1981, Strawser, along with four other individuals, was charged in a multi-count indictment arising out of the September 1 arrests (the first indictment). Strawser was named in three counts: one count of conspiracy to distribute and possess with intent to distribute more than one thousand (1,000) pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846; one count of conspiracy to distribute and possess with intent to distribute approximately five hundred twenty-five (525) pounds of marijuana, also in violation of 21 U.S.C. §§ 841(a)(1), 846; and one count of distributing five hundred twenty-five (525) pounds of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. This indictment did refer to the 4,300 pounds of marijuana discovered in the barn on the Andrew premises on September 16, 1981, but only as it related to the overt acts of three other defendants named in the indictment.

On December 4, 1981, the existence of the September 16th oral pre-indictment agreement was disclosed to the trial court during an in-camera hearing requested by Strawser's attorney. The hearing was requested because a dispute had arisen between Strawser and the government as to whether the prosecution would be allowed to disclose Strawser's cooperation with the government to his co-defendants. The

prosecution argued that it had only agreed to delay disclosure, while Strawser contended that the oral agreement prohibited any disclosure of his cooperation with the government. The trial judge denied Strawser's request to block disclosure to his co-defendants and set aside the September 16 oral agreement because of the misunderstanding.

On December 28, 1981, a written plea agreement was presented to the trial court relating to the first indictment charges against Strawser. Therein Strawser agreed to plead guilty to one count of conspiracy to distribute approximately 525 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). In exchange, the government was to recommend probation to the court pursuant to Fed.R.Crim.P. 11(e)(1)(C), and, if approved by the court, the remaining two counts against Strawser were to be dismissed. (See Appendix.) The specific language of that plea agreement, however, did not include any additional promise to refrain from prosecuting Strawser for crimes which the government might thereafter become aware of as a result of any new or continuing investigation. In fact, Strawser confirmed this absence of any additional promises during the guilty plea hearing by specifically stating to the trial court that no promises had been made to him in connection with the plea agreement other than those recited therein.[1] Following his subsequent review of the defendant's presentence report, the trial judge accepted the plea agreement and entered a judgment of conviction. Pursuant to the terms of that agreement, Strawser was sentenced to a period of five years probation supervision.

As noted earlier, this appeal involves two separate and distinct indictments, the second of which was issued on August 24, 1982. Therein Strawser was charged with one count of unlawful possession with intent to distribute 430 pounds of marijuana on June 6, 1981, in violation of 21 U.S.C.

§ 841(a)(1). This second indictment did not arise out of the information Strawser provided to the government under the September 16 oral agreement, rather, the offenses charged in the August 24, 1982 indictment were discovered as a result of the government's continuing investigation of the records seized in the September 1, 1981 raid of the Andrew, Illinois farmhouse.

On September 30, 1982, Strawser filed a Motion to Quash the second indictment contending that the offense charged was known to the government, not only prior to the formal written plea agreement presented to the trial court on December 28, 1981, but also prior to the earlier September 16 oral agreement. Specifically, the defendant points to the September 15, 1981 grand jury testimony of a DEA case agent—which provided no more than a general description of the marijuana sales records seized in the September 1 raid on the Andrew premises—and argues that this evidence demonstrates the government's complete knowledge of Strawser's chronology of criminal acts.

On November 8, 1982, Strawser pleaded guilty to the second indictment's charge of unlawful possession with intent to distribute 430 pounds of marijuana. The guilty plea was entered pursuant to a second written plea agreement which provided that Strawser would receive a jail sentence of no greater than two years. The agreement also provided that Strawser would face no further prosecution arising from the case and that his right to appeal the denial of his Motion to Quash Prosecution under the second indictment would be preserved.

On January 27, 1983, a judgment of conviction for possession with intent to distribute 430 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1) was entered against Strawser pursuant to his second plea agreement. He was sentenced to a jail term of one-year and one-day under 18 U.S.C. § 4205(b)(2) along with a two-year special parole term to follow the term of

---

1. At the conclusion of the Fed.R.Crim.P. 11 admonishments during the guilty plea hearing, the trial judge inquired, "Any threats or promises been made to get you to enter this plea?" The defendant Strawser replied, "No, sir."

his confinement. The defendant now appeals the district court's denial of his Motion to Quash Prosecution.

## II.

As noted above, Strawser contends that the district court committed error in denying his motion to quash. In his view, the August 24, 1982 (second) indictment violated the terms of the first written plea agreement between Strawser and the government because of the government's alleged knowledge, at the time that agreement was entered, of the full extent of Strawser's involvement in the sale of marijuana in the Central District of Illinois as charged in the second indictment. It is well established that when a plea agreement rests in any significant degree on a promise or agreement of the government, which induces that plea, the promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *United States v. Cook*, 668 F.2d 317, 319 (7th Cir.1982); *See also Mabry v. Johnson*, —— U.S. ——, ——, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984), *reversing* 707 F.2d 323 (8th Cir.1983). The existence of a plea agreement is a factual issue, *see De Marco v. United States*, 415 U.S. 449, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974); *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979), and the district court's determination of the question can be set aside only if found to be clearly erroneous. *United States v. Cain*, 587 F.2d 678, 680 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1543, 59 L.Ed.2d 793 (1979). *See also United States v. Pihakis*, 545 F.2d 973, 974 (5th Cir.) (per curiam), *cert. denied*, 434 U.S. 818, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977). According to the Supreme Court, a finding is " 'clearly errone-ous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In this case we hold that the district court was not clearly erroneous in its finding that the government made no express or implied promises relating to the offenses charged in the August 24, 1982 (second) indictment when the parties entered the first plea agreement on December 28, 1981.

During oral argument, the defendant asserted that the government knew of his involvement with the 430 pounds of marijuana charged in the second indictment at the time the first written plea agreement was entered,[2] and that an implied promise existed between the parties which provided that he would not be prosecuted for any additional offenses discovered as a result of the continuing investigation of the records seized on September 1, 1981. He bases his argument on the fact that the first plea agreement provided for probation and in addition recited that a petition for termination of probation would not be opposed by the government if after two years Strawser had not committed another infraction. According to Strawser, it would be inconsistent for the government to agree both to probation and not oppose termination of probation after two years of good conduct, if it knew of the offense charged in the second indictment and intended to seek an indictment and ultimate imprisonment therefor.[3] Thus, under Strawser's argument the government impliedly agreed not to prosecute for this offense since it already had knowledge of its occurrence.

---

**2.** The defendant contends the government had knowledge of the transaction charged in the second indictment as early as the September 16, 1981 oral argument.

**3.** We note that Strawser's argument is somewhat of a double-edged sword as one can persuasively contend that the very fact the government agreed to probation, and not to oppose termination of such probation after two years of good conduct, indicates that they did not have knowledge of his other criminal activity, for which he was subsequently indicted, at the time the first plea agreement was entered. It is for obvious reasons hard to believe that the government would enter such an agreement if it had had knowledge of Strawser's other crimes at the time.

The trial court, based upon its review of the law, denied the defendant's motion to quash and thus implicitly found no evidence to support Strawser's contention that the government promised, in the first written plea agreement, not to prosecute him for other crimes committed in its jurisdiction which might come to light at a later date through its continuing investigation. Our examination of the record discloses that the first written plea agreement (see appendix) contains no such promise or any language even suggesting such a promise.

 As previously noted, Strawser and his attorney expressly stated during the initial guilty plea hearing that no promises had been made to him in connection with the written plea agreement other than those enunciated therein. We recognize that a prosecutor's bad faith promise in connection with a plea agreement may involve "trickery so flagrant as to violate appellant's constitutional rights." *Trotter v. United States*, 359 F.2d 419, 420 (2d Cir.1966) (per curiam). However, this court will affirm the trial court's denial of a Motion to Quash Prosecution where the record fails to reflect such trickery on the part of the prosecutor. A plea agreement is a contract. *Brooks v. United States*, 708 F.2d 1280, 1281 (7th Cir.1983). "Resolution of the good-faith disputes over the terms of an agreement should be made by the district court, to whom the plea was originally submitted, 'on the basis of adequate evidence.'" *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979) (*quoting United States v. Simmons*, 537 F.2d 1260 (4th Cir.1976)). The disputed terms of such a plea agreement are to be determined by the district court by objective standards. *Arnett*, 628 F.2d at 1164 (*citing Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir.1972)).

Strawser's argument of implied promise rests solely on the testimony presented to a grand jury of a DEA case agent on September 15, 1981. Strawser contends that this testimony demonstrates that the government had complete knowledge of his marijuana trafficking activities prior to his first written plea agreement. Examination of that testimony reveals, however, that it was merely a general presentation of the records seized in the raid of the Andrew, Illinois site. When DEA Special Agent Koepp testified before the grand jury on September 15, 1981, concerning the sales records seized with the 525 pounds of marijuana on September 1 (the subject of the first indictment), he specifically began his testimony with the caveat that the government's investigation of those records was not complete at that time.[4] There was no evidence indicating that the government had detailed and specific knowledge (which the defendant appears to allege) of Ronald Strawser's involvement in marijuana trafficking beyond the particular offenses recited in the first indictment.

 We further note that the records presented to the grand jury made no specific mention of Ronald Strawser's name. In addition, the entries did not indicate that any sale or possession of marijuana occurred within the Central District of Illinois. Nor did the records contain any entry for June 6, 1981, the date on which Ronald Strawser was in possession of 430

---

**4.** The relevant portion of Agent Koepp's testimony is as follows:

"Q. Specifically with respect to page 1 of this particular document, could you enlighten the Grand Jury as to your understanding of the entries on that page? ...

"A. If I may preface those remarks by saying, first of all, that we are in the process of analyzing all of these documents. We seized a great number of records and computations which are now presently being analyzed by intelligence analysts who work for the Illinois Division of Criminal Investigation. So, my remarks with regard to these, to these documents are at this time at best sort of a first glance so to speak, and I would like to make these remarks to give you an opportunity to get a better understanding of what kind of records we have seized in this investigation.

"Q. Mr. Koepp, is it your intention to either directly or from other DCI agents present the findings of the analysis of these same records at a later date?

"A. Yes, sir, that's correct.

"Q. Now, for purposes of today's appearance can you go ahead and describe what your general understanding at this time is of these entries?"

pounds of marijuana with intent to distribute according to the charge of the August 24, 1982 (second) indictment. Based on the foregoing, we hold that it was not inconsistent or deceitful for the government to consent to a sentence of probation in the first plea agreement, as we do not find sufficient evidence in the record to establish that the government had any reasonably detailed knowledge of Ronald Strawser's involvement in the subsequently charged June 6, 1981 possession offense, at the time that agreement was consummated. Since the defendant has failed to establish the government's knowledge of his offense at the time of his first plea agreement, we do not find an implied promise in that agreement not to subsequently prosecute for such offense.[5] Thus, there was no misrepresentation on the part of the government in its participation in the plea agreement.

■■ In addition to the preceding arguments, Strawser appears to contend that the June 6 offense charged in the present (second) indictment, was, in fact, part of the conspiracy charged in Count I of the first indictment. As previously noted, that count was dismissed as part of the first written plea agreement. Citing *United States v. Phillips Petroleum Co.*, 435 F.Supp. 622 (N.D.Okl.1977), he argues since Count I was dismissed pursuant to the first plea agreement, no further prosecution may be undertaken for offenses included in that count. While it is true that the government cannot reprosecute for crimes covered in Count I of the first indictment, there is no indication in the record, and Strawser supplies us with none, that establishes that the June 6, 1981 possession offense was, in fact, part of Count I of the first indictment. Count I charged Ronald Strawser and others with conspiracy to distribute marijuana from July 25, 1981 to September 1, 1981. Thus the June 6 offense does not even fall within the time frame of Count I. In addition, Count I only concerned transactions relating to the Andrew, Illinois farmhouse which was initially rented and occupied on July 25, 1981, over a month after June 6, 1981. Furthermore, nothing in Count I dealt with or referred to an agreement or transactions between Michael Strawser (co-defendant in the second indictment) and Ronald Strawser, nor for that matter was Michael Strawser even mentioned in the first indictment. Thus, the June 6 offense was not part of the conspiracy charged in Count I of the first indictment and thus the dismissal of that count pursuant to the first plea agreement did not prevent the government from subsequently charging the defendant with the June 6 offense.[6]

5. Even if the government had knowledge of the June 6 offense we would not find the government in breach of the first written plea agreement by its pursuit of the second indictment. By its language and by Strawser's responses at his initial guilty plea hearing, it appears clear to this court that the first written plea agreement was only meant to cover the offenses charged in the first indictment. As our court recently reaffirmed, "[a] plea bargain is, in law, just another contract ...." *Brooks v. United States*, 708 F.2d 1280 (7th Cir.1983). Thus, to establish that the plea agreement was intended to cover all other drug-related activity which might be discovered through analysis of evidence gained from the search and seizure leading to the first indictment, the defendant must show that such intent was reasonably understood by the parties to be the meaning of the terms of the agreement. *See Arnett*, 628 F.2d at 1164. The defendant has simply failed to make this showing. Since there is nothing in the language of the first plea agreement which would support such blanket immunity nor any evidence indicating an intent to cover offenses other than those charged in the first indictment, we find no breach arising out of the second indictment and hold that the denial of the Motion to Quash Prosecution was proper.

Note also that in his second plea agreement the defendant specifically protected himself from further prosecutions involving his activities with three named individuals (specifically Richard Schair, Albert Engle, and Michael Strawser) in the Southern and Central Districts of Illinois. Obviously, if the defendant had intended and expected that his first plea agreement would provide him with similar protection, he could and should have explicitly so stated that intention in the first agreement.

6. Note that it is not entirely clear from the defendant's brief that this is his contention. We address it to answer any further question on the issue.

In December of 1981, the government promised to dismiss two counts against Ronald Strawser if he pled guilty to a third count of conspiracy to distribute 525 pounds of marijuana. The government fulfilled that part of the agreement. At that time, the government also agreed to present a recommendation of probation for Strawser to the court on his guilty plea. The government fulfilled that promise as well. From our view of the record, Strawser clearly has failed to present any evidence that the government on December 4, 1981 either expressly or impliedly promised not to prosecute him, i.e., provide him with blanket immunity for crimes he committed in its jurisdiction of which it was then unaware. Thus, we hold that the district court properly denied the defendant's Motion to Quash Prosecution. AFFIRMED..

### APPENDIX

#### GUILTY PLEA AGREEMENT

Now comes the United States of America and the Defendant, RONALD STRAWSER, and Defendant's counsel, Richard Anderson, and advises this Court of the terms of a Guilty Plea Agreement reached between the parties. Said terms are as follows:

1. The Defendant, RONALD STRAWSER, will plead guilty to Count 2 of the Indictment herein, which charges RONALD STRAWSER with conspiracy to distribute and possess with intent to distribute approximately 525 pounds of marijuana, a Schedule I nonnarcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2. The United States and RONALD STRAWSER agree, pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure, that a sentence of five (5) years probation is the appropriate disposition of the case against RONALD STRAWSER in view of the substantial cooperation provided by RONALD STRAWSER to the Government prior to the date of this Plea Agreement.

3. The United States and RONALD STRAWSER further agree that at the conclusion of the second year of probation service, RONALD STRAWSER may petition this Court for an order terminating the remaining three year period of probation. The United States agrees that it will not oppose said petition, provided that it is of the opinion that RONALD STRAWSER has successfully completed the two years probation without incidence or infraction.

4. The United States agrees to dismiss Counts 1 and 7 of the Indictment herein against RONALD STRAWSER at the time of sentencing of RONALD STRAWSER on Count 2, provided acceptance of the Plea Agreement by this Court.

5. The United States further agrees not to call RONALD STRAWSER as a Government witness in the trial of *United States v. Hector Silvera, et al.*, Central District of Illinois, Criminal No. 81-30045.

6. RONALD STRAWSER acknowledges that he has been advised by counsel and does fully understand the following:

(a) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(b) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(c) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere, he waives the right to a trial; and

(d) that if he pleads guilty or nolo contendere, the Court may ask him questions about the offenses to which he has pleaded, and if answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement; and

(e) that if he pleads guilty, he will waive his right to persist in his plea of not guilty, to be tried by a jury, to have

assistance of counsel at the trial, and to confront and cross-examine witnesses against him at the trial.