**Dennis Purtell MARX,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 89–1603.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 15, 1989.

Decided April 26, 1991.

Dennis P. Marx, pro se.

Francis L. Goodwin, Baron, Sar, Goodwin, Gill, Lohr & Jarman, Sioux City, Iowa, for petitioner-appellant.

Melvin K. Washington, Asst. U.S. Atty., Office of U.S. Atty., Milwaukee, Wis., for respondent-appellee.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The U.S. Marshal was late in delivering two cows—and therefore Dennis Purtell Marx claims that his guilty plea to drug distribution, firearms and tax charges should be thrown out. This claimed late delivery of the cows to his daughters—cows encumbered by bank liens—was, Marx asserts, a breach of his plea agreement. Marx also says that, in any event, he really didn't understand what he was pleading guilty to and therefore his plea was constitutionally infirm.

For a number of years Dennis Purtell Marx operated a wide-spread and profitable illegal drug distribution operation from two of his Wisconsin businesses, Accurate Brass and Aluminum Foundry, Inc., and Maple Tree Farms. Both the foundry and the farm served to hide money from drug sales. As to Maple Tree Farms, cattle were purchased and improvements were made to the farming operation from drug sale proceeds. The farm was also used by Marx for other activities such as the beating administered to a drug debtor to encourage him to pay his bills. All this came to an end, however, on August 7, 1985, when Marx was charged in an indictment with twenty-six counts of criminal offenses related to his drug distribution operation.

Thirteen months after the indictment was returned, Marx entered into an extensive and detailed plea agreement with the government. The basic plea agreement document consisted of forty-nine pages to which were added seven pages of addenda. In return for Marx's agreement to plead guilty to three of the counts in the indict-

ment and to cooperate in ongoing investigations, the government agreed to dismiss the remaining twenty-three counts, recommend a sentence of fifteen years, and raise no opposition to Marx's continued release on bail pending sentencing. The plea agreement also provided in detail for the forfeiture, sale and disposition of Marx's business and farm assets—including delivery of twenty-one head of forfeited cattle to Marx's daughters.

On September 8, 1986, pursuant to the plea agreement, Marx pleaded guilty to (1) operating a continuing criminal enterprise involving drug distribution, (2) possessing an unregistered AR-15 automatic rifle, and (3) filing a false federal income tax return for the year of 1983. Marx was sentenced on October 21, 1986, to twenty-five years imprisonment (later reduced by the district court to sixteen years imprisonment). No direct appeal was taken.

Thereafter, Marx filed a request for habeas corpus relief in which he sought to vacate his sentence and withdraw his guilty plea. The district court found no merit in Marx's habeas corpus claims and refused to vacate his guilty plea. We affirm the denial of relief.

I.

According to Marx, the seven-month delay in placing two forfeited cows in the possession of his daughters was a government breach of the cattle-delivery requirement of the plea agreement and thus constitutes a sufficient basis to vacate his guilty plea. Marx also asserts that the government breached the plea agreement by not delivering the twenty-one head of forfeited cattle to his daughters free of encumbrances.

To resolve these contractual claims we must interpret several relevant provisions of the plea agreement and apply these provisions to facts which are not in dispute.[1] As we held in *United States v. Mooney*, 654 F.2d 482, 486 (7th Cir.1981), "[a] plea

---

1. Appended to this opinion are the pertinent provisions of the plea agreement relating to forfeited assets.

bargain is a contract, terms of which necessarily must be interpreted in light of the parties' reasonable expectations. The resolution of each case depends upon the essence of the particular agreement and the Government's conduct relating to its obligations in that case." *See also United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir.1985); *Brooks v. United States*, 708 F.2d 1280, 1281 (7th Cir.1983).

Our focus is on those sections of the plea agreement which concern the forfeiture and disposition of the assets of Maple Tree Farms—in particular a herd of cattle. We begin our examination with Paragraph B of Section VIII of the plea agreement which provides that twenty-one specified head of forfeited cattle (and two donkeys not at issue here) be delivered to Marx's daughters by the United States Marshal "upon the imposition of sentence." Absent any qualifying or limiting provisions, this would require delivery of the cattle at or shortly after sentencing.

We know that delivery of nineteen of the twenty-one head of forfeited cattle was accomplished shortly after sentencing. Marx was sentenced on October 21, 1986. Nineteen cattle were repossessed from Marx's daughters' possession by a lienholder bank in late January of 1987. Thus, at least nineteen of the twenty-one head of cattle were delivered within three months of sentencing—and in fact there is nothing in the record to show that those nineteen were not delivered even earlier. In any event, Marx previously defined his claim by stating that "the government did not abide by the terms of the plea agreement, that is[,] [ ] the government did not return these two cattle upon sentencing." [2] Thus, it is the delivery of the last two cows seven months after sentencing that Marx asserts was contrary to his reasonable expectations.

To resolve whether Marx's expectations were reasonable we must examine the entire plea agreement to determine if other terms or conditions qualify or limit the provision in Paragraph B of Section VIII for delivery of the cattle "upon sentencing."

A significant factor which impacted on any expectation of delivery was the requirement that all the cattle be forfeited to the United States. Section VII of the plea agreement provides that after Marx's plea of guilty is accepted, the court, shall enter a forfeiture order "to provide that all right, title, and interest is vested in the United States of America with regard to all of the property and assets described in ... Attachment C of this Plea Agreement...." Attachment C lists as one of the classes of forfeited assets, "any and all livestock including, but not limited to all black angus bulls, cows and calves titled to or otherwise owned by Dennis P. Marx and/or Maple Tree Farms...." There is no provision anywhere in the plea agreement exempting the cattle or any other assets listed in Attachment C from forfeiture.[3]

Both the government and Marx acknowledge in the plea agreement that the United States has the obligation to protect third-party interests and claims with respect to the forfeited assets. Title 21 U.S.C. § 853 is specifically referred to in Paragraph A of Section VII of the plea agreement, and that statute provides a mechanism for the protection of third-party interests in forfeited property. The statute states that when disposing of forfeited property, provision must be made "for the rights of any innocent persons," thus requiring the government to protect third parties by taking into account any conflicting claims. 21 U.S.C. § 853(h). Delivery of forfeited property to third parties could not, under

2. "Traverse to Government Response," filed in the district court on June 30, 1987. Marx also notes in his "Memorandum in Support of Motion to Vacate Judgement Pursuant to Title 28 U.S.C., sec. 2255," filed in the district court on May 18, 1987, that the government was in breach of the plea agreement because of the late delivery of two cows.

3. The headings of both Sections VII and VIII of the plea agreement refer to "non-forfeited" property and assets. However, only those "properties and assets [that] are necessary sources of funds needed ... to satisfy" taxes, penalties and interest assessed by the Internal Revenue Service up to $297,000 are "non-forfeited." No property listed in Attachment C is specifically designated as "non-forfeited."

the terms of the statute incorporated into the plea agreement, be carried out in a way which would jeopardize lienholders.

In this case, there were conflicting claims filed with respect to the cattle. The government noted in its "Response in Opposition to Defendant's Motion Pursuant to 28 U.S.C. § 2255," filed in the district court on June 17, 1987, that it delayed delivery of the two cows pending resolution of claims filed under § 853(n). Conflicting claims were made by lienholders with respect to the cattle the government agreed to deliver to Marx's daughters. After the conflicting claims were resolved, the last two cows were delivered. The delay in delivery was a necessary consequence of the statutory duty owed by the government to third parties, and the performance of that duty was contemplated by Marx and the government according to the terms of the plea agreement.

The government's statutory duty with regard to the forfeited property, acknowledged in the plea agreement, had the effect of qualifying and limiting the timing of delivery of any encumbered cattle. Viewed objectively, the delivery of the last two cows only after conflicting lienholders' claims had been resolved could not be contrary to any reasonable expectations based on the plea agreement. *See United States v. Strawser,* 739 F.2d 1226, 1230 (7th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984) (disputes regarding terms of plea agreement are determined by objective standard). The delay in delivery of the two cows was consistent with the parallel obligations placed on the government and recognized in the plea agreement—the obligation to deliver the forfeited cattle "upon sentencing" and the obligation to protect the rights of "innocent persons." The government delivered nineteen of the twenty-one head of cattle "upon sentencing." The government's seven-month delay in delivering two cows, which came only after resolution of disputed claims by lienholders, did not constitute a breach of the plea agreement.

■ We next examine Marx's allegation that the government breached the plea agreement by not delivering the cattle free of encumbrances. Marx claims that because the plea agreement had a clause requiring the payment of all liabilities, obligations, and other encumbrances of Maple Tree Farms with proceeds from the sale of forfeited Maple Tree Farms assets, the government was required to pay the encumbrances on the cattle delivered to his daughters.

By the terms of the plea agreement, the government agreed to the specified disposition of all forfeited assets. Again, we focus on the farm holdings. Paragraphs A and B of Section VIII set out separate treatment for the government's disposition of two different groups of Maple Tree Farms forfeited assets; those to be sold and those to be distributed in kind.

Paragraph A of Section VIII deals with those assets that are to be disposed of by sale. Paragraph A details how the proceeds of sales are to be used to satisfy various obligations, including this provision:

> after proceedings held in accordance with the provisions in 21 U.S.C. § 853(n), [the proceeds will be used for] payment of any and all bona fide liabilities and/or obligations of Maple Tree Farms together with any other encumberance(s) [sic], unless, pursuant to the terms of any sale or purchase agreement, such liability, obligation, and/or encumberance [sic] is assumed by the purchaser of such property or asset.

The discussion of sale or purchase agreements in this context gives the clear implication that the proceeds will be used to satisfy encumbrances only on assets disposed of by sale. The interpretation of Paragraph B also supports this conclusion.

Paragraph B of Section VIII directed the disposition of the twenty-one head of cattle to Marx's daughters. Rather than being sold, these forfeited assets were to be distributed in kind by the government to the daughters. Paragraph B contains no provision for the satisfaction of encumbrances on the cattle.

The structure and language of these provisions leads to the following conclusion.

Paragraph A of Section VIII details the "disposition by sale" of certain forfeited assets and the use of the sale proceeds to satisfy encumbrances *on those assets sold.* Paragraph B, on the other hand, deals with the "non-sale disposition" of other forfeited assets—the twenty-one head of cattle— with no corresponding provision for the satisfaction of encumbrances on those assets. The result is that the government had no duty to satisfy the encumbrances on the cattle before distributing them to Marx's daughters and its failure to do so did not result in a breach of the plea agreement. Again, based on a rational interpretation of the foregoing sections, Marx's expectations that the liens on the twenty-one head of forfeited cattle would be satisfied was objectively unreasonable. *Strawser,* 739 F.2d at 1230.

The district court was not clearly erroneous in determining that the government had complied with the terms of the plea agreement—both as to the delivery of cows and the encumbrances on those cows. *See id.* at 1229–30 (stating standard of review).

## II.

Marx's other argument is that his plea of guilty was constitutionally infirm. This argument centers on the following contentions. Marx claims he did not understand that a conviction under the continuing criminal enterprise statute required supervising, managing, or organizing five or more persons. He also claims he did not understand that the filing of a false income tax return had to be willful, and that the possession of an unregistered firearm had to be knowing.

We start, of course, with the very necessary proposition that guilty pleas are generally accorded finality. *See Blackledge v. Allison,* 431 U.S. 63, 71–72, 97 S.Ct. 1621, 1627–28, 52 L.Ed.2d 136 (1977). It is therefore no surprise that the defendant bears the burden of persuasion as to a plea's voluntariness after the plea has been entered. *United States v. Wildes,* 910 F.2d 1484, 1486 (7th Cir.1990). Of course, a guilty plea is valid only if it is made voluntarily, knowingly, and intelligently.

*Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Generally, a guilty plea must have a basis in fact and the defendant must admit to that basis in fact. *United States v. Frye,* 738 F.2d 196, 199 (7th Cir.1984). But, the defendant must also possess an understanding of "the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). A valid guilty plea should represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), *quoted in Frye,* 738 F.2d at 199.

■ This is not a direct appeal, so the application of Federal Rule of Criminal Procedure 11 is not the issue in determining the validity of the plea in this case. Marx brings his action under 28 U.S.C. § 2255, where relief is available only if any legal error in taking the plea is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Nevarez–Diaz v. United States,* 870 F.2d 417, 422 n. 1 (7th Cir.1989). The constitutional protection at issue here is the true voluntariness of the plea. *See, e.g., Haase v. United States,* 800 F.2d 123, 127 (7th Cir.1986). "Thus, a guilty plea is constitutionally infirm, as opposed to only violative of Rule 11, when the plea is not knowing and intelligent." *Id.* It is the constitutionality of the plea, not the technical requirements of Rule 11, that forms the basis of our analysis.

■ Marx must show that the taking of the plea by the trial judge did not meet constitutional muster, and under these circumstances, we are not bound to look solely at the transcript of the plea hearing in making this constitutional determination. "In analyzing the 'voluntariness' of guilty pleas courts have looked beyond the transcript of the plea hearing to all the surrounding facts and circumstances." *Id.*

There is no claim that Marx did not have the mental capacity to comprehend the proceedings of the plea hearing. He is a high-school graduate and has taken a two-year course in college-level engineering. He was also a successful businessman, having started and operated a foundry for twenty years. But the district court still must proceed with caution, because "the ability to comprehend is meaningless if through the failure of court and counsel you do not receive the information necessary to understanding." *Id.* If Marx, however, was adequately informed of the nature of the charges, then he cannot prevail.

The background of this case discloses that Marx had thirteen months prior to the entry of his plea to become acquainted with the charges against him. Marx was indicted on August 7, 1985. He was arraigned the next day. The plea agreement was filed with the court on September 8, 1986. During the intervening year, Marx himself or his attorney filed dozens of documents relating to the various twenty-six counts against Marx, including the three counts to which Marx eventually pleaded guilty. These included a motion with attached memorandum for the dismissal of the continuing criminal enterprise count, a motion with attached memorandum for the dismissal of various counts including the false tax return count, a motion to dismiss or in the alternative to elect between the continuing criminal enterprise count and a conspiracy to distribute count with attached memorandum, and a motion for the severance of several counts, including the unregistered firearm count and the continuing criminal enterprise count. There were a number of motions directed to the counts which Marx now alleges he does not understand.

At the crucial time of the plea hearing Marx was placed under oath. The district judge then engaged Marx in a discussion regarding the entry of his plea. Marx told the court that he had reviewed the plea agreement and that he understood that he was pleading guilty to the three stated counts. The court determined that Marx understood that the counts concerned engaging in a continuing criminal enterprise involving drugs, possessing an unregistered firearm, and filing a false income tax return. The judge then told Marx that after the Assistant U.S. Attorney outlined the elements of the counts charged, the judge would ask Marx to confirm that he understood the elements of the three offenses. The Assistant U.S. Attorney then began to describe the elements of each count to which Marx was pleading guilty.

As to the false tax return count, the government recounted as an element of proof in an oral presentation that Marx willfully made a false return for 1983. Marx later responded affirmatively when asked by the judge whether he understood that that element among others was present in his situation.

As to the unregistered firearm count, the government listed as elements of proof in an oral presentation that Marx possessed a firearm known as an AR–15 automatic rifle, and that the weapon was not registered. The government also noted that the evidence would show that Marx knew registration was required. Marx later responded affirmatively when asked whether he was satisfied the government was in a position to prove all of those elements.

As to the continuing criminal enterprise count, the government began reviewing the elements of proof during an oral presentation. The government's listing of the elements was interrupted by the court at one point but the government came back during the district court's questioning of Marx to specifically point out to Marx and the court the remaining elements of the continuing criminal enterprise. Marx then responded affirmatively when asked whether he understood terms used in the charges as defined by the plea agreement, whether he understood the language setting out the elements in the plea agreement, and whether those were the same elements he had discussed with his attorney.

During this colloquy between Marx and the district court, the judge provided Marx with a copy of the plea agreement, directed Marx's attention to the six-page section of the agreement setting forth in detail the "elements of offenses to which defendant

will plead guilty," and asked Marx to follow along.

Next the government indicated that it was prepared to recite a fifty-five page "Offer of Proof" which would set forth the factual basis for the plea. Marx's attorney told the court that he had reviewed the "Offer of Proof" with Marx and it was not necessary or appropriate to go through it on the record. Defense counsel also indicated that, in general, Marx was in agreement with the document. He added that any disagreement Marx had with the "Offer of Proof" was not material to the government's ability to prove the elements of the offenses. The court then took a recess during which the judge directed Marx to review a copy of the "Offer of Proof." The judge also reviewed the proffered evidentiary statement during the recess. When the hearing resumed, the judge asked Marx whether "in the overall, basic ... picture ... [the "Offer of Proof" is] something that you substantially understood would be the government's proof." Marx answered affirmatively. The court then found that there was a factual basis for the plea.

■ It is appropriate to note that there is a presumption of truthfulness for responses given under oath by a defendant during a plea hearing. *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987). As we indicated earlier Marx was under oath when he made the foregoing responses to the inquiries of the district judge.

■ Marx now argues that he did not understand the willfulness element of filing a false tax return. This argument is untenable. The Assistant U.S. Attorney, when reviewing the elements of the charge of filing a false income tax return at the plea hearing, specifically noted the elements' location in the plea agreement and then went through each element orally. This included the requirement that the defendant, in making and subscribing to the return, do so willfully. Plea Tr. at 13. Marx later responded that he was satisfied that the elements listed by the government were present in his situation. Plea Tr. at 17.

With respect to the unregistered firearm count, although Marx held a federal firearms dealer's license, Marx now denies he knew that the firearm was fully automatic and required registration. The government stated in its recitation of the elements that:

> although the government is not required to prove that the defendant knew that the weapon in his possession was a firearm within the meaning of the statute, [the evidence would show] that the defendant knew that registration was required. The evidence would have proven that he was knowledgable [about] these elements.

Plea Tr. at 14. Marx then admitted that the government was in a position to prove the required elements—including the registration requirement. Plea Tr. at 18. Marx fully understood the nature of this charge.

With respect to the continuing criminal enterprise count, Marx now alleges that he did not understand the requirement that he must have supervised, managed, or organized five or more persons. Although this was one of the two elements the government initially passed over at the plea hearing when reciting the elements, the Assistant U.S. Attorney later went back and described this element by name and pointed out to Marx and the court the exact pages on which the final three elements of the continuing criminal enterprise count were found in the plea agreement. The Assistant U.S. Attorney referred to the element as "in concert with five people." This was in reference to the requirement of 21 U.S.C. § 848(c)(2)(A):

> which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management....

The Assistant U.S. Attorney pointed to the specific page on which the element above was found and defined. Plea Tr. at 18–19. The district judge likewise pointed to the particular page on which that element was set forth, and directed Marx's attention specifically to the element he now alleges

he did not understand. Plea Tr. at 19. Marx acknowledged he was familiar with the elements, and that he felt he understood the language included on those pages, which described and defined the elements. Marx also acknowledged that those were the elements that he had discussed with his counsel. Under these factual circumstances, we conclude that Marx was fully aware of the elements of this charge as well.

The district court's other questions to Marx and the surrounding circumstances and background are also important in determining whether Marx understood the nature of all of the charges. Marx acknowledged he had reviewed the "Offer of Proof," and agreed in general with the factual basis it set forth. Marx acknowledged by signing the plea agreement that:

> he has read and fully understands the charges in the Indictments in each of the cases pending against him, and that he fully understands the nature and elements of the crimes with which he has been charged and that those charges have been fully explained to him by his attorney.

He admitted to the judge that he was in fact guilty when queried about each of the three crimes. "Although the Constitution makes knowledge a condition of a valid plea, it does not prescribe any formula for the creation of that knowledge." *Wildes*, 910 F.2d at 1486. A thorough examination of the plea hearing and all the surrounding facts and circumstances demonstrates that Marx's guilty plea met constitutional requirements that it be voluntary, knowing and intelligent. Marx has failed to carry his burden of persuasion to the contrary. The district court did not err in finding that Marx's plea had been made in compliance with the Constitution.

### III.

The district court acted correctly in refusing to vacate the guilty plea of Dennis Purtell Marx and the decision of the district court is hereby AFFIRMED.

## APPENDIX

Relevant portions of the plea agreement provide the following.

VII. *DISPOSITION OF THE FORFEITED AND NON–FORFEITED PROPERTY AND ASSETS*

A. [If Marx's guilty plea is accepted by the court it is agreed] the court shall then enter a forfeiture order pursuant to 21 U.S.C. § 853(a) and in accordance with the forfeitures in 21 U.S.C. § 853(a), to provide that all right, title, and interest is vested in the United States of America with regard to all of the property and assets described in ... Attachment C of this Plea Agreement ... except to the extent that such properties and assets are necessary sources of funds needed:

1. To satisfy any and all taxes, penalties, interest and other charges that have been assessed by the Internal Revenue Service. . . .

B. It is further agreed and understood by the parties to this agreement that in accordance with the terms of this agreement the court shall order the disposal by the United States Marshal Service and under the auspices of the court, *all* of the assets and properties described in Attachment C of this agreement by sale or any other commercially feasible means, and shall further order that the proceeds derived from the sale or other commercially feasible disposal of the assets and properties ... be distributed in accordance with the order and sequence of distribution set forth below in section VIII of this agreement, making due provisions to protect the interest of the United States and third parties.

VIII. *DISPOSITION OF THE PROCEEDS FROM THE DISPOSAL OF THE FORFEITED AND NON–FORFEITED ASSETS AND PROPERTIES*

A. It is further understood and agreed by the parties to this agreement that ... following the sale or other commercially feasible disposition of the assets and properties described in Attachment C of this

 agreement and under the auspices of the court in accordance with paragraphs A and B contained in Section VII of this agreement, the court shall order that the proceeds from the disposal of the assets and properties be distributed by the United States Marshal Service and pursuant to court order, in the following order of priority:

. . . .

2. *Assets and Properties Associated with Maple Tree Farms*

(a) First, payment of any and all expenses incurred by the United States Marshal Service in conjunction with the seizure, maintenance, security and sale of the properties and assets described in Attachment C, and the repayment to the National Asset Forfeiture Fund of any advances made to the property and assets by the United States Marshal Service.

(b) Second, after proceedings are held in accordance with the provisions in 21 U.S.C. § 853(n), payment of any and all bona fide liabilities and/or obligations of Maple Tree Farms together with any other encumberance(s) [sic], unless, pursuant to the terms of any sale or purchase agreement, such liability, obligation, and/or encumberance [sic] is assumed by the purchaser of such property or asset.

(c) Third, payment of the remaining balance shall be made to the United States Department of Justice's Asset Forfeiture Fund pursuant to 21 U.S.C. § 524(c).

B. It is further agreed and understood by the parties to this agreement that upon the imposition of sentence on the defendant ... the United States Marshal shall deliver to either Kathy Marx, Susan Marx or Lynn Brogge (whichever of the three they collectively/jointly or otherwise designate to be the recipient), twenty-one head of cattle, as more fully described in Attachment F of this Plea Agreement, from the Maple Tree Farm herd.

(ATTACHMENT C)

. . . .

(c) any and all livestock including, but not limited to all black angus bulls, cows and calves titled to or otherwise owned by Dennis P. Marx and/or Maple Tree Farms; . . . .

(ATTACHMENT F)

CATTLE BY I.D. NUMBER

The livestock to be released to either Kathy Marx, Susan Marx or Lynn Brogge, in accordance with paragraph 21 [sic] of the Plea Agreement are as follows:

Tag # 1
 8
 14D with calf 211
 16C
 43
 75
 132
 75-1
 1312 and new calf
 403
 16C-2
 R21
 R29
 R33
 604
 63
 66
 R46
 R40

Additionally, the United States Marshal shall return to the above-referenced individuals two donkeys.

CUDAHY, Circuit Judge, dissenting.

I believe that the innovative but ultimately deficient procedure used to accept Marx's guilty plea here fails to meet constitutional standards. In addition, the government fell significantly short in carrying out its commitments under the plea agreement with respect to the return of the cows. I therefore respectfully dissent.

I.

It is a crucial constitutional requirement that, for a waiver of right to trial to be valid, a defendant's plea must be knowing and voluntary. *Haase v. United States*, 800 F.2d 123, 127 (7th Cir.1986). The majority correctly points out that the district

judge here did not follow the prescriptions of Rule 11 in taking the plea. It is also true that fidelity to Rule 11 is not the issue on a collateral attack, such as this one. Nonetheless, because the change of plea proceeding did not include a recitation of the elements of the crime and because the offer of proof terminated very prematurely, I would vacate the plea and permit Marx to plead anew.

We have always treated procedures for acceptance of pleas as absolutely vital to ensuring that the plea is voluntary, knowing and intelligent. The standard we employ does not turn merely on the probability that Marx understood his plea. Rather, the record must support a reasonable belief that Marx knew the contours of the law and understood the relationship between his actions and the legal standards. *United ed States v. Frye*, 738 F.2d 196, 199 (7th Cir.1984) (defendant "must understand not only the nature of the charge against him or her, but also that his or her conduct actually falls within the charge"); *Nevarez–Diaz v. United States*, 870 F.2d 417, 420–21 (7th Cir.1989).

The record certainly does not support the conclusion that Marx had an understanding of the CCE offense. The majority's reliance on inferences from certain surrounding circumstances—Marx's education, the familiarity with the offense Marx arguably gained during the pre-trial period and the motions directed to the counts which Marx now alleges that he does not understand—involves only the most indirect clues that Marx had an understanding of either the elements of the CCE offense or of the offenses in his background that support the CCE conviction. The majority also points out that the Assistant U.S. Attorney and the judge actually recited the elements of the offense, albeit in a distressingly interrupted and halting manner. The entire extent of this recitation, while Marx held a copy of the plea proceedings in his hands, is as follows:

Q [Judge]: As to count twenty-four, commencing at the bottom of page eight and running over to the top of page nine, are you satisfied that those are the elements that you and your attorney dis-

cussed in connection with the proof that would be required of the government in this case before you could be found guilty?

A [Marx]: Yes, I am, your Honor.

Mr. Wagner [Assistant U.S. Attorney]: Your Honor, in connection with the second, just so the record is complete, the elements of count twenty-four, the CCE offense, really the first element is contained at the bottom of page eight, which is, there is at least three violations. That is then explained over paragraph nine, and paragraph ten.

Mr. Glynn [Marx's Attorney]: Page nine and ten.

Mr. Wagner: Page nine and ten. And on page eleven are the final three elements of the CCE offense, that is paragraphs B, C, and D, violations were continuing series of violations, they were in concert with five people and substantial resources. Just for the sake of the record.

Change of Plea Tr. at 18–19.

As a recitation of the elements of the offense these quoted comments are strikingly deficient. In addition, the Assistant U.S. Attorney, in his earlier description of the offense, verbally outlined only a general description of the CCE charge. Tr. at 15–16. And as the quoted excerpt shows, the court did not provide an adequate, on-the-record recitation of the elements of the crime.

The Supreme Court has stated that a court may not, merely through the defendant's representations about his offense, conclude that he understands the nature of the offense. *Blackledge v. Allison*, 431 U.S. 63, 75, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). That the defendant has read the plea agreement or has signed a statement of the facts is not enough to show that the plea is voluntary. *United States v. Bernal*, 861 F.2d 434, 436–37 (5th Cir. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989). The demonstration of knowledge and of voluntariness must be on the record and it must be clear. A defendant's discussion with his attorney, which the court in part relied upon here, is

generally insufficient. *United States v. Ray*, 828 F.2d 399, 406, 410 (7th Cir.1987), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988).

The complexity of the offense is also an important determinant of the thoroughness demanded of the judge; a guilty plea to CCE—a highly complex criminal statute—certainly requires more than reference to a written summary. Nowhere in the transcript is there a clear and thorough description of the CCE elements. Perhaps the description in the copy of the plea agreement that Marx had before him was accurate. Perhaps he understood the elements correctly. Perhaps Marx's attorney explained the elements adequately. But the court's obligation is to ensure that any uncertainties are eliminated—on the record.

In addition, the district court's method of accepting the government's offer of proof fails, in my mind, to meet constitutional standards. The proof was likely to be long—fifty-some pages—and so the judge accepted the suggestion of Marx's attorney that the formal presentation of the proof be eliminated because Marx and his attorney largely agreed with its contents. The judge then asked Marx whether he understood the contents of the offer, and Marx responded that he did. This procedure does not ensure that Marx in fact understood the offer, and Rule 11, though not directly applicable here, rejects this approach. Marx acknowledged that he had listened to his lawyer and read the offer of proof. But there is no indication that the *judge* satisfied himself that Marx understood fully the contents of the offer.

The majority holds the failure of the court to follow traditional plea-taking procedures harmless because Marx purportedly understood the charges against him. The "totality of the circumstances" test is flexible, and when employed, a strong presumption must still be given to what is in the record. Here, in my mind, neither the

transcript alone nor the totality of the circumstances adequately supports a finding of voluntariness. Consistent with *McCarthy v. United States*, 394 U.S. 459, 472, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418 (1969),[1] Marx should have the opportunity to plead anew.

## II.

Nor is the return of the cows a simply trivial matter. From the briefs and the district court's ruling, it appears that twenty-one cows were in issue. The majority now deduces from circumstantial evidence in the record that only two cows are actually at stake. The picture constructed by the majority has required a fair amount of detective work that I think inappropriate when the government makes no such claims for itself. The district court, ruling on Marx's section 2255 motion to vacate sentence, does not mention the number of cattle. Decision and Order (Jan. 20, 1989), at 2–7 (Appellant's App. at 29–34). Nonetheless, even if only two cows are at stake, I would vacate this plea because of the government's inexplicable failure to abide by the terms of the agreement.

The consideration surrendered by a defendant in entering a plea agreement is no less than his right to a trial and, often, his freedom. Plea agreements must be interpreted strictly. With respect to the transfer of the cows, the district court held that "upon" meant "sometime after." The majority, not dealing with this point, instead concludes that the government's delay in returning the two (twenty-one?) cows was justified because the government first had to resolve conflicting lienholders' claims to the cattle under Section VII of the agreement. This procedure, the majority claims, is compelled because the twenty-one head of cattle are mentioned not only in Section VIII(B)'s promise from the government to return the cattle but are also listed in At-

---

1. *McCarthy* involved application of Rule 11, and the addition of Rule 11(h) in 1983 narrowed the holding's scope. Rule 11(h) states "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Because Marx's rights to trial and to understand completely the charges to which he pleaded are substantial, his situation is not susceptible of "harmless error" analysis.

tachment C's schedule of assets to be forfeited.

Section VII appears to govern disposition of the property listed in Section VIII. But this procedure cannot possibly include all of Section VIII. It is true that Section VII clearly governs the property list in Section VIII(A), which references Schedule C's list of cattle. However, Section VII(B) provides:

> It is further agreed and understood by the parties to this agreement that in accordance with the terms of this agreement the court shall order the disposal by the United States Marshal Service and under the auspices of the court, *all* of the assets and properties described in Attachment C of this agreement by sale or any other commercially feasible means, and shall further order that the proceeds derived from the sale or other commercially feasible disposal of the assets and properties described in Attachment C of this agreement be distributed in accordance with the order and sequence of distribution set forth below in section VIII of this agreement, making due provisions to protect the interest of the United States and third parties.

Plea Agreement at 19–20 (emphasis in original). Yet Section VIII(B) clearly commands return of the cows and not cash from their sale. I therefore conclude that Section VIII(B) must be read independently of the lien-clearing provisions of Section VII. These cows were to be returned upon sentencing (immediately or, at least, promptly)—not after determining how to protect lienholders under 21 U.S.C. § 853(a), and certainly not, under the totality of Section VII, upon their sale.

I also find the majority's reasoning unconvincing because it appears to compel the conclusion that the government should have satisfied the outstanding obligations on the cows before their return. The majority justifies late delivery of the cows because of the government's obligation under 21 U.S.C. § 853(a), as incorporated in Section VII. This rests on Section VII(B)'s mention of Attachment C, which includes livestock from Maple Tree Farms. Yet when Attachment C assets are again mentioned in Section VIII(A), the majority prefers not to make the cows eligible for the lien-clearing procedure. A more consistent interpretation is that Section VIII(B)'s reference to the cows—in Attachment F—is distinct from both the hindrance of Section VII's delay and the lien clearance provision of Section VIII(A).

The defendant has shown why the prompt return of the cows was of moment to him and to his daughters. It was treated as a substantial term of the plea bargain. It should certainly not be our job to speculate and search the record for excuses for the government's non-compliance with the agreement.