53 F.3d 334
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Benjamin P. WOODY, Petitioner-Appellant,
v.
Jack R. DUCKWORTH, Respondent-Appellee.
 No. 94-1671.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 21, 1995.*
Decided May 3, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Benjamin P. Woody, who is serving two life sentences for two counts of second degree murder, brought this pro se petition for habeas corpus relief under 28 U.S.C. Sec. 2254, alleging that his guilty plea was involuntary because the state trial court failed to advise him of the maximum mandatory sentence for his plea and because the prosecutor made erroneous assurances about his parole eligibility which induced him to plead guilty. The district court denied the petition, concluding that Woody's guilty plea was voluntary and complied with constitutional requirements. On appeal, Woody renews his contentions that his plea was involuntary. We affirm.
 
 BACKGROUND
 
 2
 This case arises out of two murders for hire. Donald Norton promised to pay Benjamin Woody $57,000 to kill Norton's wife Christine and their four-year old son Bret. On January 9, 1976, Woody entered the Norton home and killed Christine and Bret Norton by repeatedly stabbing them with a knife. Woody turned himself in to police authorities eight days later. He gave written statements to the police about his involvement in the crimes, and subsequently testified against Norton at Norton's trial. Norton v. State of Indiana, 273 Ind. 635, 408 N.E.2d 514 (1980). Woody was indicted for two counts of first degree murder.
 
 
 3
 Woody's attorney negotiated a plea agreement, under which the State, in exchange for Woody's plea of guilty to two second degree murder charges, agreed to recommend "life imprisonment on both Counts of Second Degree Murder." In September 1976, Woody appeared before the trial judge at the plea hearing, admitted that he had maliciously and intentionally killed Christine and Bret Norton, affirmed that he had understood the written plea statement, stated that no "threats or promises" had been used to make his plea of guilty, and pleaded guilty to two counts of murder in the second degree. At the end of the hearing, the court accepted the plea and sentenced Woody to two concurrent life terms. Woody did not directly appeal the sentence.[1]
 
 
 4
 In November 1985, Woody petitioned for postconviction relief in the Indiana state courts, alleging that his guilty plea was involuntary by reason of (1) the guilty plea court's failure to inform him of the sentencing consequences of his plea and (2) assurances made by the prosecutor to Woody's family that Woody would be eligible for parole. The postconviction judge held an evidentiary hearing and then denied Woody's petition. The Indiana Court of Appeals affirmed the judge's decision, and the India Supreme Court declined to accept transfer of this case.
 
 
 5
 Woody then filed a federal habeas corpus petition under 28 U.S.C. Sec. 2254, again alleging that his guilty plea was involuntary. The district court denied the petition, concluding that the state court did in fact carefully explain the sentencing consequences of the plea to Woody and that the prosecutor's communications to Woody's family did not violate Woody's rights or taint his plea. This appeal followed.
 
 DISCUSSION
 
 6
 On appeal, Woody asserts that his plea was invalid because (1) the trial court failed to inform him that he faced two life terms as his sentence for the crimes; (2) the trial court did not advise him that his sentence would render him ineligible for parole; and (3) he entered the plea in reliance upon certain assurances made by the prosecutor to his family about his parole eligibility.
 
 
 7
 We are bound under 28 U.S.C. Sec. 2254(d) to respect the state courts' factual findings regarding Woody's guilty plea, as well as the inferences drawn from those facts, unless the findings are not fairly supported by the record as a whole. Parke v. Raley, 113 S. Ct. 517, 526 (1992); see also Sumner v. Mata, 449 U.S. 539, 545-47 (1981). On the other hand, whether a plea is voluntary for constitutional purposes has generally been referred to as a question of law, subject to plenary review. Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983). This approach has recently come under question. In Stewart v. Peters, 958 F.2d 1379, 1381-82 (7th Cir.), cert. denied, 113 S. Ct. 239 (1992), for instance, we suggested that a clearly erroneous rule standard of review is appropriate when, as in this case, the district judge did not hold an evidentiary hearing, but made a determination on the basis of a paper record equally available to us. 958 F.2d at 1382; see also United States v. Wildes, 910 F.2d 1484, 1486 (7th Cir. 1990) (on direct appeal, appellate court reviews deferentially, and not de [vo, district court's decision that defendant's guilty plea was voluntary).] [ This issue need not be resolved here, however, since the outcome of our decision would be same under either a clearly erroneous or de novo standard.]
 
 
 8
 Guilty pleas "are accorded a great measure of finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977). The defendant bears the burden of persuasion regarding the voluntariness of a plea after it has been entered. Marx v. United States, 930 F.2d 1246, 1250 (7th Cir. 1991), cert. denied, 503 U.S. 939 (1992). A defendant who pleads guilty must be aware of the "relevant circumstances and likely consequences" surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). The defendant must make this plea both voluntarily and intelligently. Boykin v. Alabama, 395 U.S. 238, 242 (1969).
 
 
 9
 Woody argues that his plea was invalid because the trial court did not advise him that he would be sentenced to two life terms. However, the Indiana Court of Appeals, after reviewing the transcripts from the guilty plea and postconviction hearings, found that the record "unequivocally establishes that Woody unmistakably knew he was to receive two life sentences." Woody v. State of Indiana, No. 05A02-9205-PC-204, slip op. at 6 (Ind. Ct. App. Mar. 29, 1993). The appellate court also found that "the record [was] devoid of any statement by the guilty plea court that Woody would receive anything other than life sentences." Id. These factual findings, which we afford the same presumption of accuracy as findings made by the state trial court, 28 U.S.C. Sec. 2254(d); Milone v. Camp, 22 F.3d 693, 697 n.2 (7th Cir. 1994), cert. denied, 115 S. Ct. 720 (1995), are fairly supported by the record. For instance, Woody's testimony at the postconviction hearing reveals that he understood the State's recommendation that he be sentenced to life imprisonment on each count of murder:
 
 
 10
 And so then [my lawyer] said, "The State has offered a plea agreement, a plea bargain." And I said, "What is that?" He says, "They will offer you second degree and recommend life for each charge."
 
 
 11
 (Postconviction Hearing of 12/16/91, R. at 340.) In answering a subsequent question posed by his attorney at the hearing, Woody responded that the State had offered him two life sentences:
 
 
 12
 Q: OK, so [the State] offered you life sentences, two life sentences?
 
 
 13
 A: Yes.
 
 
 14
 Id. at 341. We infer from this evidence that Woody did understand before he entered into the plea agreement that he would be sentenced to two life terms, one for each murder.
 
 
 15
 Woody also blames the guilty plea court for not explaining that his sentence would render him ineligible for parole. He contends that the court's failure to so advise him left open the possibility in his mind that he might yet qualify for parole, and thus induced him to plead guilty. In Hill v. Lockhart, 474 U.S. 52, 56 (1985), however, the Supreme Court made clear that a state trial court's failure to inform a defendant of his or her parole eligibility is not a basis for invalidating a guilty plea: "We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts."
 
 
 16
 Next, Woody claims that the prosecution improperly communicated with his family before he had entered his guilty plea. According to Woody, the prosecutor told family members that he would "do something" for Woody in exchange for Woody's testimony against Donald Norton and that Woody might be eligible for parole in ten years. Woody asserts that these conversations, which were conveyed to him through family members, induced him to enter a plea of guilty. Woody's claim, however, is not supported by the record. As the Indiana appellate court noted, Woody testified under oath at the postconviction hearing that nobody promised him anything in order to encourage him to plead a certain way. Moreover, paragraph 11 of the Motion to Enter Plea of Guilty - signed in five places by Woody - states that Woody's guilty plea had not been induced by "any promise from anyone that I would receive probation, a lighter sentence, or any other form of leniency...." Based upon these statements in his plea agreement and Woody's testimony at his plea hearing, we agree with the Indiana appellate court's conclusion that Woody's plea was not invalidated by the prosecutor's conduct.
 
 
 17
 Finally, Woody claims that his plea was involuntary because it was given in reliance on misrepresentations about his parole eligibility made to him and to his family by his attorney at the plea hearing. Woody procedurally defaulted on this claim, however, when he failed to raise it (or a comparable ineffective assistance of counsel claim) in his petition to transfer to the Indiana Supreme Court. Nutall v. Greer, 764 F.2d 462, 465 (7th Cir. 1985).
 
 CONCLUSION
 
 18
 Because Woody understood that he was being sentenced to two life terms, his guilty plea was voluntary and complied with due process. He has failed to show constitutional error in his guilty plea. Accordingly, we AFFIRM the district court's denial of Woody's petition for a writ of habeas corpus.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Although Woody's failure to directly appeal his conviction constituted a procedural default for purposes of Indiana's post-conviction remedy, Sec. 2254 relief is not barred here because the state courts proceeded to decide Woody's claims on the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("State procedural bars are not immortal.... If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available.")