RYDER, Acting Chief Judge.
Appellant Roberto Alex Gonzalez challenges his conviction for grand theft of a water pump on the ground that the trial judge erred in denying his motion for judgment of acquittal. We agree and reverse.
Appellant was employed by Major Utility, a subcontractor on the building site of a recreational vehicle park being constructed by Trailinn, Inc. Major Utility had six people working on the project, including appellant. Appellant’s job was to monitor two diesel water pumps at the rear of the project, which covered seventy-four acres. Major Utility workers did not have permis *1275 sion to be at the front of the project, where the project office and security guard was located.
At trial, the Trailinn project manager testified that when he discovered the pump was missing, he thought someone had come through the woods and stolen it. He did not have any reports about the missing pump, and none of the people who worked for him had seen it or moved it. The pump had been located next to the project office building for less than a week before he reported it was missing. The project manager could not recall what day he noticed the pump was missing, but testified it could have been the same day he reported the theft. He did not know what day he reported it missing to the sheriff’s department. The pipes for the stolen pump were shiny and had tape marks on them.
The Trailinn security guard testified that on June 4, 1986, he was on duty from 4:00 p.m. until midnight. He worked at the front of the project and checked all vehicles entering and leaving. At about 7:30 to 8:00 p.m. on June 4, appellant drove a front-end loader from the rear of the project onto the asphalt at the front of the project. He told appellant that no heavy equipment was allowed on the asphalt, and appellant replied that his boss told him to clean up the pipe. Appellant picked up only one piece of pipe. It had wires hanging off of it and had a shiny object on the other end. According to the guard, appellant then drove the front-end loader to the back of the project and did not return, but appellant’s “buddy” came back to get the rest of the pipe. At about 9:30 p.m., appellant and his friend, who was also his relief man, appeared at the guardhouse. Appellant said his friend had to run him home. They left in the automobile, but first drove to the back of the project. The guard did not know whether there was anybody else at the back of the job site at that time. When appellant and his friend finally left the job site they blew the car horn, which is what they normally do. Appellant’s friend later came back and parked his car at the back of the project.
Additional testimony by the guard also revealed that around 6:00 p.m. that same day, carpenters and electricians had engaged in some cleanup work in the area. The project manager stated that he was not aware of any cleanup left to be done by Major Utility. However, he admitted that it was possible for the Major Utility foreman to have given duties to his night workers. The Major Utility foreman did not have to go through him, and he would not know what orders were given.
A Polk County Sheriff’s Department investigator testified that during his investigation he saw heavy track marks leading from the front of the project extending one-fourth of a mile back to a pile of pipes. On the pile there was one piece of newer pipe which had residue of electrical tape on it.
During his defense, appellant testified that he had been instructed to pick up everything in sight at the construction project. He recalled talking to the security guard and that the guard told him to take the front-end loader off the asphalt. He picked up four pipes with well points on the ends. Well points are made out of aluminum and are shiny. Appellant stated the guard’s testimony that appellant only had one pipe was incorrect. When the fork of a front-end loader is up, even if there are ten pieces of pipe loaded on it the number won’t show because they are all piled up so neatly. Appellant did not see the pump nor pick up the pump. Another man relieved him that night, but first drove him home. The pump was not in the car.
At the close of the state’s case, appellant moved for judgment of acquittal on the ground that the case was based upon pure speculation and failed to prove appellant stole the pump. The trial court denied the motion, and also denied appellant’s renewed motion for judgment of acquittal at the end of defendant’s case. The jury returned a guilty verdict on the grand theft charge.
Where a case is based upon circumstantial evidence, such as this one, a special standard of review applies. That standard is “[wjhere the only proof of guilt *1276 is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.” See Jaramillo v. State, 417 So.2d 257 (Fla.1982) (citing McArthur v. State, 351 So.2d 972 n. 12 (Fla.1977)). The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine. See Heiney v. State, 447 So.2d 210, 212 (Fla.1984), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Rose v. State, 425 So.2d 521, 523 (Fla.1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). However, the jury verdict must be supported by substantial, competent evidence, meaning the evidence must be legally sufficient. Heiney, 447 So.2d at 212; Rose, 425 So.2d at 523. The legal sufficiency of the evidence is a matter of law for the appellate court to decide. Tibbs v. State, 397 So.2d 1120 (Fla.1981), affirmed, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). In this case, the evidence is legally insufficient to establish a prima facie case that appellant was guilty of the offense for which he was convicted, therefore, the court erred in denying his motion for judgment of acquittal. Garrett v. State, 508 So.2d 427, 428 (Fla. 2d DCA 1987).
Viewing the evidence in its entirety and in a light most favorable to the state, the evidence was not of such substantial and competent quality to allow the jury to infer that appellant stole the pump. The project manager did not know when the pump was taken or the day he noticed it was missing. He testified that he first thought someone came through the woods to steal it. His staff did not remember seeing the pump or noticing that it was missing. The security guard did not see appellant with the pump. Because the record is completely devoid of evidence of when the pump was discovered missing, the state failed to even establish that the pump was present on the project site the day appellant moved pipe. Even upon the speculation that the pump was stolen on the same day appellant moved pipe, numerous other persons were present at the project site on that day and had equal access to the pump. Additionally, the state’s evidence only showed that appellant moved pipe used with the pump from the front of the site to a pile located elsewhere, not that appellant took the pipe for the pump. This case simply lacks substantial, competent evidence to establish that appellant stole the pump. Without more, appellant’s conviction cannot be sustained.
Reversed and remanded with instructions to vacate appellant’s conviction.
SCHOONOVER and PATTERSON, JJ., concur.