UNITED STATES of America,
Plaintiff–Appellee,

v.

Lyle D. WILDES, Defendant–Appellant.

No. 89–3799.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 8, 1990.

Decided Aug. 23, 1990.

Mark A. Cameli, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Martin I. Hanson, Hanson, Gasiorkiewicz & Weber, Racine, Wis., for defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Lyle D. Wildes stands convicted of cocaine offenses. On appeal the only question is whether he should have been treated as a "career offender" under the Sentencing Guidelines, which substantially increased the presumptive range and led to a sentence of 22 years' imprisonment. Only a person who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense" may be treated as a career offender. U.S.S.G. § 4B1.1(3). Wildes has two prior drug convictions. Still, he contends that they should count as one—first because a plea of guilty was not voluntary, and second because the two convictions were close in time.

Application Note 4 to § 4B1.2 says that the provisions of § 4A1.2 determine the tally of prior convictions. Application Note 6 to § 4A1.2 says that "[c]onvictions which the defendant shows to have been constitutionally invalid may not be counted". Wildes believes that his conviction in a Wisconsin court of aiding and abetting the delivery of marijuana is constitutionally invalid because he did not enter an intelligent plea of guilty. According to the one-page information, Wildes helped John Talley deliver $1,500 worth of marijuana to a customer. Talley was tried and acquitted by a jury. Wildes elected to plead guilty, although his attorney advised him that he had a "viable" defense to the charge, to ensure that any sentence would run concurrently with that on pending cocaine charges. The plea bargain effectively cut the sentence to zero.

Before accepting the plea, the state judge ensured himself that Wildes understood the brief charge laid against him. Nonetheless, Wildes insists, his plea was involuntary, because, instead of reciting the elements of aiding and abetting under Wisconsin law, the judge recited the more complex elements of being a party to a crime. Wildes also maintains that he did not then (and does not now) understand how he could be guilty of aiding and abetting someone who was acquitted. The federal district judge examined the transcript of the plea in state court and heard testimony from Wildes. At the conclusion of the hearing the district judge concluded that Wildes' plea was voluntary and therefore counted toward the two convictions required by § 4B1.1(3).

■ Our initial question is whether to review this decision deferentially or make an independent (*de novo*) decision about the voluntariness of Wildes' plea. In this circuit appellate judges review *de novo* the voluntariness of confessions, *United States v. Hawkins*, 823 F.2d 1020, 1022 (7th Cir. 1987), an approach that has come under question and is ripe for reexamination. See *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1253–55 (7th Cir.1988) (concurring opinion); *Weidner v. Thieret*, 866 F.2d 958, 960–61 (7th Cir.1989); *United States v. Rodriguez*, 888 F.2d 519, 522 n. 1 (7th Cir.1989); *Wilson v. O'Leary*, 895 F.2d 378, 383 (7th Cir.1990); *United States v. Rutledge*, 900 F.2d 1127, 1128–29 (7th Cir. 1990); cf. *United States v. Malin*, 908 F.2d 163, 169–70 (7th Cir.1990), (concurring opinion) (questioning *de novo* review of probable cause determinations). The argument for *de novo* review of confessions starts with the rule that the state bears the burden of establishing the validity of the confession and adds that *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), holds that voluntariness is a question of "law" for purposes of 28 U.S.C. § 2254(d), requiring an independent federal decision. Subsequent opinions observe that a question may be one of law for purposes of state-federal relations without being one of law for purposes of appellate

review, and that the placement of the burden of persuasion between the parties does not allocate functions between trial and appellate courts.

■ Even if *Hawkins* remains this court's rule for confessions, we will not extend it to the voluntariness of guilty pleas. Once the plea has been entered, the defendant rather than the prosecutor bears the burden of persuasion. *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987). We have a judgment of the state court, not just an assessment of a police officer's tactics. And the voluntariness of a plea is at best a mixed question of law and fact—a conclusion reached by applying legal rules to facts. Many recent cases treat the legal characterization of facts as a question of "fact" for purposes of appellate review, even when the question is the "ultimate issue" in a case. E.g., *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986) (the definition of a statutory "seaman"); *Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (the identification of racial discrimination). See also *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990); *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933–35 (7th Cir.1989) (in banc); *Mucha v. King*, 792 F.2d 602, 605–06 (7th Cir.1986); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428–29 (7th Cir.1985). These and many similar cases emphasize the non-recurrent nature of factual patterns. Reevaluating the significance of a record, or many records, does not produce or develop rules of law; it just ensures duplication of effort among federal judges.

■ Duplication is wasteful, and judges need to conserve their time. More, duplication is unauthorized. Congress directed the courts of appeals to extend substantial deference not only to the district judges' findings of fact in implementing the guidelines, but also to the "application of the guidelines to the facts." 18 U.S.C. § 3742(e). See also, e.g., *United States v.*

*Marshall*, 908 F.2d 1312, 1326 (7th Cir. 1990) (in banc). The district judge carefully evaluated the transcript of the plea and heard Wildes' testimony; he was in the best position to apply the legal rules to the facts, and we review his decision deferentially.

■■ The state judge informed Wildes about the rules concerning party-to-a-crime liability. This overstated the prosecution's burden; if Wildes was willing to plead guilty after this advice from the state judge, an accurate statement of the lesser standard for aiding and abetting would not have changed his mind. Indeed, Wildes never says that he did not *know* the elements of the offense, an omission that by itself would support the district judge's decision. Although the Constitution makes knowledge a condition of a valid plea, it does not prescribe any formula for the creation of that knowledge, *Henderson v. Morgan*, 426 U.S. 637, 645–47 & n. 18, 96 S.Ct. 2253, 2257–59 & n. 18, 49 L.Ed.2d 108 (1976). Fed.R.Crim.P. 11 is not a clause of the fourteenth amendment.

■ Wildes' observation that he does not see how he can be guilty while Talley was acquitted gains him nothing. Knowledge of the elements of an offense is essential to voluntariness; knowledge of the legal rules concerning inconsistent dispositions of criminal cases is unnecessary. Punishment depends on Wildes' acknowledgment that he committed the crime. What happened to Talley is irrelevant. If the state judge had patiently explained that the acquittal of the principal does not excuse the accessory, *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), Wildes would have become more eager to enter his plea. And if advice that criminal cases may have inconsistent outcomes had left Wildes scratching his head, bafflement would not have undermined his plea—it would have put him in the company of many federal judges. E.g., *United States v. Powell*, 719 F.2d 1480 (9th Cir.1983), reversed, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Standefer*, 610 F.2d 1076, 1098–1114 (3d Cir. 1979) (in banc) (Aldisert, Seitz & Gibbons,

JJ., dissenting), affirmed, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

■ The remaining argument is that Wildes' two convictions should be treated as one under Application Note 3 to § 4A1.2, which says that "[c]ases are considered related if they ... (3) were consolidated for trial or sentencing." Application Note 3 deals with "relatedness", a subject that affects whether federal crimes are "grouped" under the guidelines and whether sentences run consecutively or concurrently. There is something of a mismatch between "relatedness" and whether two cases count as "two ... convictions" for purposes of § 4B1.1(3). Although Note 4 to § 4B1.2, which defines the terms used in § 4B1.1, sends us to § 4A1.2, this does not necessarily imply that all of the application notes to § 4A1.2 are pertinent to the terms in § 4B1.1. See *United States v. Gross*, 897 F.2d 414 (9th Cir.1990), concluding that consolidation for sentencing has no logical relation to the function of § 4B1.1 and holding that convictions for two distinct crimes can satisfy the standards of § 4B1.1(3) even though sentences were meted out in one proceeding. We need not decide whether to follow *Gross*, because Wildes was sentenced by two Wisconsin judges on two occasions for two distinct criminal transactions. He may have hoped for consolidation, but that never occurred. Not by the wildest stretch of the imagination does Application Note 3 to § 4A1.2 provide that cases in which the defendant *wanted* but did not get consolidation are a single "conviction" for purposes of § 4B1.1(3).

AFFIRMED.