**Walter STEWART, Plaintiff,**

v.

**Howard PETERS, III, Warden, Pontiac Correctional Center, Defendant.**

No. 89 C 8761.

United States District Court, N.D. Illinois, E.D.

July 19, 1991.

---

David Carl Thomas, Chicago–Kent College of Law, Chicago, Ill., for plaintiff.

Terence Madsen, [COR LD NTC] Illinois Atty. General's Office, William P. Pistorius, Renee Goldfarb, Cook County State's Attorney's Office, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is the petition of Walter Stewart ("Stewart") for a writ of habeas corpus. For the following reasons, the petition is granted.

## FACTS

Stewart is currently under a death sentence for two murders, an attempted murder, and other offenses committed during a February 10, 1980 armed robbery of the Empire Jewelry Store in Berwyn, Illinois.[1] On July 31, 1980, Stewart pleaded guilty to eleven charges arising from the robbery (six counts of murder, one attempted murder count, and four armed robbery counts), while seven other charges for which he was indicted were either dropped by the State

---

1. The underlying facts of the offenses to which the petitioner pleaded guilty are set forth in detail in *People v. Stewart,* 101 Ill.2d 470, 79 Ill.Dec. 123, 463 N.E.2d 677 (1984).

or merged into other charges.[2] Stewart was sentenced to death for the two murders on August 8, 1980 by the Cook County associate judge before whom he had pleaded guilty. The petitioner received additional 30–year concurrent prison terms for the attempted murder and armed robbery convictions.

The Illinois Supreme Court, to which Stewart had appealed directly, upheld his convictions and death sentence on February 22, 1984. *People v. Stewart*, 101 Ill.2d 470, 79 Ill.Dec. 123, 463 N.E.2d 677 (1984). Stewart's subsequent petition for a writ of *certiorari* was denied by the United States Supreme Court. *Stewart v. Illinois*, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984). In March 1985, Stewart filed a post-conviction petition under Ill.Rev.Stat. ch. 38, para. 122–1 *et seq.* (1985) in Cook County Circuit Court, which was dismissed. The Illinois Supreme Court later affirmed the dismissal. *People v. Stewart*, 123 Ill.2d 368, 123 Ill.Dec. 927, 528 N.E.2d 631 (1988). Stewart then sought federal habeas corpus relief under 28 U.S.C. § 2254, filing on November 19, 1990 the amended petition now before this court.

The petitioner asserts that his guilty plea was entered in violation of the due process clause of the fourteenth amendment because the judge who accepted the plea failed to admonish the petitioner adequately regarding the nature of the charges involved and the maximum and minimum sentences petitioner would be facing, and failed to question the petitioner to ensure that the guilty plea was voluntary and intelligent.

Stewart pleaded guilty on the day his case was called for trial. First, the State moved to drop five of the 18 counts in the information against Stewart: an attempted murder charge, two aggravated battery charges, and two armed violence charges (R. 2–3).[3] A discussion between the court and counsel followed regarding the amendment of three other counts.[4] Stewart then waived his right to a jury trial and was questioned by the judge concerning that waiver (R. 5–6). A five minute recess followed, after which, Stanley Sacks, an assistant Cook County public defender representing Stewart, informed the court that Stewart intended to plead guilty (R. 7–8). Sacks told the court that during the recess Stewart had spoken over the phone with his mother and sister regarding a guilty plea. Sacks also explained that he and his co-counsel had advised Stewart during the break that, in view of the state's actions that morning in dropping the five counts to which Stewart had a defense, "no useful purpose would be served" by proceeding to trial on the remaining counts. The attorney also said Stewart was advised that a guilty plea would not prevent the State from seeking the death penalty (R. 8).

The court then asked Stewart whether his attorney's account was correct. Stewart replied "yes, sir" (R. 8). Sacks then asked three questions: whether Stewart had spoken with his mother and sister, "with the sheriff's permission," whether Stewart had heard Sacks's account to the judge, and whether "in fact is that your

---

**2.** The transcript of the plea proceeding does not clearly reveal the distribution of charges to which Stewart pleaded guilty, although it is clear that he pleaded guilty to multiple counts of murder and armed robbery, and a single attempted murder count. See Transcript of Change of Plea at 90–92. The distribution set forth above is based in part on the petitioner's First Amended Petition For Writ of Habeas Corpus at 6.

**3.** The "R." citations refer to the transcript of the change of plea proceeding and the sentencing hearing.

**4.** The transcript of the guilty plea proceeding does not clearly show what these amendments involved or when they were made, even though one of the prosecutors expressed an intent to

"make sure that [the record] is clear" (R. 3). When the State asked one of Stewart's attorneys whether he agreed that the amendments "were in fact made," the judge said, "that isn't what the half sheet shows," and Stewart's counsel replied "[t]hat is my best recollection ..." (R. 4). The proceeding then moved on to other matters. Although the record shows confusion as to which counts are being nolle prossed, which have been amended, and which are being amended (R. 2–4), defense counsel asserts "the State had dismissed" certain counts and that "because of the fact ... that those five counts ... are no longer pending ... no useful purpose would be served by proceeding with an actual denial of guilt ..." (R. 7–8).

decision of what you wish to do?" (R. 8–9). All of these questions elicited answers of either "yes, sir" or "yes" from Stewart.

The court then decided to take the guilty plea after the lunch break. Before breaking, the judge advised Stewart "of certain possibilities" and that by pleading guilty he would give up his right to a jury trial, as well as his right to any trial. The judge said he would merely receive a statement of facts from the prosecutors and, if Stewart and his lawyers agreed, a finding of guilty would be entered (R. 9–10).[5] Asked whether he understood, Stewart said "yes" (R. 10). The court then told Stewart:

> I must also advise you that on a plea of guilty to the charges in this case the State could and in all likelihood might well seek the death penalty. And the fact that you plead guilty would not necessarily obviate the imposition of such a penalty.
>
> Now, I've told you sometime ago when you waived a jury it was one of the most important decisions in your life. And now you are coming to probably the most important decision in your life.

(R. 10). The court proceeded to advise Stewart that if the State sought the death penalty, it would have to prove that Stewart was 18 years old or older, and that "certain aggravating factors" existed that qualified Stewart for a death sentence. Stewart was also told by the court that he would have a right to a jury trial on these elements. The judge added that "there is a good likelihood" that the State would seek the death penalty, and if so, Stewart would need to thoroughly discuss with his lawyer whether he wanted a jury for the death penalty proceeding (R. 11).[6] Stewart said "yes, sir" when asked if he understood (R. 11).

Finally, just before the lunch break, Stewart's attorney, Sacks, asked Stewart on the record whether Sacks had advised him that a guilty plea would not preclude a death sentence, and whether they previously discussed whether to waive a jury for the death penalty proceeding. Stewart replied "yes" to the first question and "right" to the second (R. 11–12).

An hour later, when court resumed after lunch,[7] Sacks entered Stewart's guilty plea to "whatever counts are still left in the Indictment. There is a general plea of guilty to the Information pending before this court" (R. 14).[8] The State then sug-

---

**5.** This statement arguably ignores that the agreed upon facts would have to be sufficient to sustain a conviction on specific crimes charged in the information. To agree with the facts does not mean necessarily that a finding of guilty is the inevitable result. Furthermore, the judge never did ask Stewart if he agreed with the facts (R. 90).

**6.** The State remained silent at that point and, although not required to do so, could have made its intentions clear to Stewart. During the guilty plea proceeding, the State's plan to seek a death sentence was not clearly expressed until the very moment the trial judge finished entering findings of guilty on Stewart's plea (R. 92).

**7.** The following confusing exchange is in the record:

> The court: All right, Mr. Stewart, you have had a chance to think over what we have talked about.
> The defendant: Yes, sir.
> The court: You so wish to insist [sic] in your plea of guilty or do you wish to change it?
> The defendant: No, sir.
> The court: You wish to have me hear the case?

The defendant: Yes, sir, I think it would be fair.
> The court: Is there a plea to all remaining counts?

(R. 14). The compound, confusing question to which the defendant replies, "No, sir," leaves doubt as to what the defendant meant by his answer. Breaking down the question to "wish to insist [sic] in your plea of guilty" should arguably lead to the answer, "Yes, sir, I persist in my plea of guilty." Further, the second question leaves doubt as to whether the defendant knew he could persist in his original plea of not guilty, or that even at this point in the record he still had the option to plead guilty or not guilty. Additionally, when the judge said, "You wish me to hear the case?", the answer by the defendant leads to the inference that he is not pleading guilty but is expecting a hearing or trial and that "it would be fair." However, the judge goes beyond a hearing or trial and asks, "Is there a plea to all the remaining counts?"

**8.** Why counsel first referred to an indictment and then to an information is not clear on the record.

gested having Stewart plead to each count individually (R. 14). Assistant State's Attorney Magnuson stated: "Your Honor, perhaps we could itemize the individual counts and ask how the Defendant pleads to each and every count in the Information." However, Sacks, the lawyer appointed to represent the defendant, interjected that as the plea encompassed a single event, "the armed robbery and subsequent deaths," it was not necessary for Stewart to plead to the counts individually (R. 14–15). The judge again pointed out, "Counts as set forth on the court sheet don't correspond with the Information," but then apparently corrected either the record or himself, saying, "That's all right then, I'm sorry, that's all right" (R. 15). After the State said it would be satisfied with a general plea, the judge said: "Okay. Plea of guilty, jury waived" (R. 15). The defendant was silent during this part of the proceeding, never indicating that he understood what "a general plea" was. Furthermore, the court never inquired of him or advised him. Stewart never was directly asked how he pleaded to the remaining counts, and Stewart never said "guilty" before the judge said, "Okay. Plea of guilty. Jury waived."

The court then admonished Stewart regarding his "general plea," stating in part:

> I don't want you to think that by entering a plea of guilty and saving the State and the court the time involved in a trial that that would mean that it would have a great deal of affect [sic], a baring [sic]

on the question of what the penalty would be.

(R. 16). When asked by the judge "do you understand that," Stewart said "yes, sir," and Stewart also agreed with the judge's statement that "there isn't any so-called agreement or what might be termed, quotes, 'Appeal'." (R. 16).[9] Assistant State's Attorney Magnuson then stated for the record that the State had not negotiated with Stewart regarding the plea, and Stewart's attorney said there was no plea agreement (R. 16–17).[10]

Mr. Sacks expressed to the judge concern about the taking of the plea of guilty (R. 18). The transcript shows that the defendant's attorney said: "The only reason I brought that up some of the other courtrooms that I have been in there's were rather lengthy admonishments prior to a plea. I didn't know that due to the rather hurriness [sic] that, *if the Court had admonished*" (R. 19) (emphasis added).

The judge then admonished Stewart regarding waiver of his rights to a jury trial and to cross-examine the witnesses against him. Again, Stewart said "yes, sir" when asked if he understood (R. 18–19). The judge repeated that there would be no trial, no cross-examination, and that the State could still seek the "maximum penalty" (R. 19). Other rights the defendant would be giving up by pleading guilty are not mentioned by the court. Finally, the judge asked Stewart if he wanted to persist in his guilty plea, and Stewart answered "yes, sir" (R. 19). Stewart was not advised that

---

**9.** The judge's use of the word, "Appeal," was not further explained by him, although he went on to say, "I want you to be sure you understand that before you go ahead with this plea." (R. 16). Stewart replied, "Yes, your Honor," but it is not clear what he understood. Further, the judge's remark concerning "saving . . . the time involved" is an argumentative statement merely invoking the defendant Stewart's assent to the judge's interpretation of the rationale for Stewart's guilty plea. The judge takes all of the bases for which the defendant may be pleading guilty and reduces them to one: "saving the State and the Court the time involved in a trial." The judge's statement is also compound. When the defendant says he understands "that," his answer is ambiguous because it is difficult to determine which part of the statement he understands. The judge has characterized the basis

for the defendant's guilty plea without asking him about it.

**10.** Why the prosecutor dropped certain counts and amended others immediately before the change of plea began is not made clear in the record. However, the judge chose not to pursue the difference between the prosecutor's saying he had not negotiated and the defense attorney's saying only that there was no plea agreement. The judge also chose to ignore the earlier reference to a meeting in the prosecutor's office the day before and a review of the prosecutor's file, followed by the defense counsel's telling the prosecutor there would be a jury waiver (R. 4–5). The judge did not inquire of the defendant if his decision to change his plea was induced by coercion, threats or promises.

he could persist in his original plea of not guilty, one of the alternative courses of action available to him.

Thereupon, the State embarked on a recitation of the evidence in the case encompassing 70 pages of transcript (R. 19–90). At the end, Sacks said "[s]o stipulated that is what the witnesses would say" (R. 90). Sacks' statement differs from the prosecutor's version of the stipulation (R. 19). Neither the court nor any of the attorneys made any inquiries of Stewart with regard to the facts. Following the recitation, the court entered findings of guilt to counts identified basically by number at the State's request, also without questioning Stewart (R. 90–92). The court did not address a single word directly to Stewart.

## DISCUSSION

■ Federal habeas corpus relief is designed "to ensure that state convictions comply with the federal law in existence at the time the conviction became final...." *Sawyer v. Smith,* —— U.S. ——, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990). Before a state conviction can be subjected to habeas review, however, a petitioner must first exhaust all available state court remedies. *Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

■ Guilty pleas are generally accorded finality. *See Blackledge v. Allison,* 431 U.S. 63, 71–72, 97 S.Ct. 1621, 1627–28, 52 L.Ed.2d 136 (1977). A defendant seeking to overturn his guilty plea bears the burden of persuasion as to the alleged involuntariness of his plea. *United States v. Wildes,* 910 F.2d 1484, 1486 (7th Cir.1990). A guilty plea, however, is valid only if it is made voluntarily, knowingly and intelligently. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Moreover, a guilty plea must have a factual basis and the defendant must admit to that basis. *United States v. Frye,* 738 F.2d 196, 199 (7th Cir.1984). The defendant must also understand "the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22

L.Ed.2d 418 (1969). A valid guilty plea should therefore reflect "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

■ This court, in determining the constitutionality of a guilty plea, may look "beyond the transcript of the plea hearing to all the surrounding facts and circumstances." *Marx v. United States,* 930 F.2d 1246, 1250 (7th Cir.1991) (quoting *Haase v. United States,* 800 F.2d 123, 127 (7th Cir. 1986)). The Constitution "does not prescribe any formula for the creation of that knowledge" required to support a guilty plea. *Wildes,* 910 F.2d at 1486. The voluntariness of a guilty plea, however, must be established in the record; waiver of the important constitutional rights surrendered upon such a plea "cannot [be] presume[d] ... from a silent record." *Boykin,* 395 U.S. at 242–43, 89 S.Ct. at 1712. The waived rights need not be explained fully during a guilty plea proceeding to comply with the constitution, but a court must at least apprise defendants of their "right to plead guilty and that, if they plead guilty, they waive the right to trial." *United States v. Henry,* 933 F.2d 553, 559 (7th Cir.1991) (holding that the constitutional minimum requirements are set forth in the Supreme Court's proposed amendment to Fed.R.Crim.P. 11, H.R.Rep. No. 94–247, 94th Cong. 1st Sess. 21–22 (1975), reprinted in 1975 U.S.Code Cong. & Admin.News 674, 693–94).

Stewart's guilty plea was governed by Illinois Supreme Court Rule 402, which has the same essential features as its federal counterpart, Federal Rule of Criminal Procedure 11. *See Henry,* 933 F.2d at 560–61. Rule 402 parallels the federal due process requirements for a valid guilty plea, and therefore provides a useful starting point for this court's analysis. Rule 402 requires, in part, that before a court accepts a guilty plea, the judge must personally address the defendant in open court and determine that the defendant understands (1) the nature of the charge, (2) the applicable minimum and maximum sentences, (3)

the defendant's right to plead not guilty, to maintain a prior not guilty plea in the case, or to plead guilty, and (4) that a guilty plea will prevent any trial of the matter and will constitute a waiver of the defendant's right to a jury trial and to confront adverse witnesses. Ill.Rev.Stat. ch. 110A, para. 402(a) (1970). In addition to the above admonitions, the judge must question the defendant regarding the voluntariness of the plea, and thereby confirm that the guilty plea was not induced by coercion, threats or promises outside a plea agreement. *Id.,* para. 402(b). Only "substantial compliance" with these requirements is necessary. *Id.,* para 402. Illinois courts have found "substantial compliance" where the court's admonitions would provide an ordinary person in the defendant's circumstances with the required information. *Henry,* 933 F.2d at 560–61 (citing *People v. Krantz,* 58 Ill.2d 187, 193, 317 N.E.2d 559 (1974), overruled in part by *People v. Wills,* 61 Ill.2d 105, 330 N.E.2d 505, *cert. denied,* 423 U.S. 999, 96 S.Ct. 430, 46 L.Ed.2d 374 (1975)).

■ In this case, the judge did not question Stewart during the plea proceeding concerning the nature of the charges, nor did he ask Stewart to acknowledge any of the facts recited by the State. The judge also failed to ask if Stewart had discussed the nature of the charges and any possible defenses with his attorneys.[11] Further, the judge accepted a general guilty plea, rather than requiring separate pleas to the individual counts. This point is particularly troublesome. There was no discussion of the necessary elements of any of the offenses, no explanation of how particular pieces of evidence established those elements, and no questioning of Stewart as to his under-

standing of these matters. "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). That necessary foundation was seriously lacking here.

The general guilty plea problem is exacerbated by the multiple charges involved. Stewart pleaded guilty to six murder charges, the only potential capital offenses in the information, even though only two people were killed. Neither the judge nor any of the attorneys explained to Stewart during the plea proceeding the nature of the multiple murder charges. Apparently, for each person killed, Stewart was charged under each of the three types of murder listed in Ill.Rev.Stat. ch. 38, § 9–1(a) (1979): (a)(1) intentional, (a)(2) reckless, and (a)(3) felony murder. There is some variance among the elements, particularly the intent required, for the different types of murder. *See People v. Harris,* 72 Ill.2d 16, 23–24, 17 Ill.Dec. 838, 841, 377 N.E.2d 28, 31 (1978). Although the arguably stipulated evidence might support a conviction under any of the three types, the judge simply never ascertained during the plea proceeding whether Stewart understood the nature of the murder charges, and whether he admitted the necessary conduct or mental state under any of the three types.

Stewart also pleaded guilty to four armed robbery charges, but no effort was made during the plea proceeding by the judge, or anyone else, to determine whom Stewart admitted robbing. Although there

---

**11.** Although a court may generally presume that defense counsel explained the nature of the charges to his client, *Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258–59, the record in this case undermines such a presumption. There was only a five minute recess between Stewart's waiver of his right to a jury trial and his decision to plead guilty. Prior to the recess, the State dropped several charges and amended other charges. One of Stewart's attorneys told the judge that pleading guilty was a "subject which only came up" after the State's actions. Five minutes would hardly seem to be enough time

for defense counsel adequately to apprise Stewart of the ramifications of the State's amended information. Moreover, Stewart also spoke over the telephone with his mother and sister during the recess. Most of the guilty plea proceeding occurred after a one-hour lunch break, at the State's suggestion. Stewart expressed his intention to plead guilty to all of the remaining counts prior to the lunch break, and there is no indication in the record that Stewart and his attorneys spent the lunch hour reviewing the nature of the charges and the possible defenses.

is less chance of confusion over the multiple armed robbery charges than over the murder charges, there was also no explanation of the nature of armed robbery.

A troubling aspect is the nature of attorney Sacks's stipulation to the evidence. Sacks merely stipulated to "what the witnesses would say" (R. 90). He did not agree that the evidence would be sufficient to establish any particular charge or any charge at all. The stipulation is similar to that found in some so-called stipulated bench trials in Illinois courts, where the defendant concedes the facts but not the legal conclusion to be drawn therefrom. *See People v. Horton,* 143 Ill.2d 11, 21–22, 155 Ill.Dec. 807, 811–12, 570 N.E.2d 320, 324–25 (1991). The troublesome nature of stipulations and stipulated bench trials has been the subject of a great deal of discussion in the State of Illinois courts. *See id.* at 18–20, 155 Ill.Dec. at 810–11, 570 N.E.2d at 323–24, and cases cited therein. Sacks's stipulation was ill-defined, and the trial judge made no effort to clarify the stipulation by inquiring of Sacks or Stewart. We are not convinced that the judge was correct in concluding that Sacks's stipulation was sufficient to constitute an adequate admission on Stewart's part. The judge, in effect, drew Stewart's knowledge and consent from his silence. However, the judge did not state on the record that that is what he was doing. Furthermore, attorney Sacks had earlier said: "No, judge, I would just like to clarify one thing that we do stipulate as to the testimony of Laura Landsinger and Linda Manzano. That does not necessarily concede that we are saying that everything that was stipulated to was accurate or that there were other things that I would bring out in cross examination for purposes of plea of guilty to the charges therein" (R. 82). After Sacks's

remarks, the judge did not inquire or make any statement to Sacks or the defendant (R. 82, 90). The prosecutor simply went on with the recitation.

Of major significance regarding the recitation of facts is the judge's explanation of the procedure to the defendant: "I merely hear a statement from the prosecutors as to what the facts are. If *you and your lawyers* agree there is a finding of guilty and a judgment of guilty on those findings" (R. 10) (emphasis added).

The record clearly shows the attorneys for Stewart did not unequivocally stipulate that the evidence proffered by the prosecution was sufficient in law and fact to support convictions on specific counts in the information. The judge never inquired of counsel and never addressed any remark to the defendant on that issue. The court was required after the prosecutor's recitation to determine that the defendant understood the facts in relation to the law and admitted the factual basis.[12] The court failed to meet this requirement. It is untenable that the remarks of Sacks, coupled with the silence of Stewart and the failure of the court to inquire, ended the adversarial resolution of the legal and factual issues in this death sentence case.

The court's failure to discuss with the defendant the nature and elements of the murder, attempted murder, or armed robbery charges distinguishes this case from *Marx,* 930 F.2d 1246, in which a constitutional challenge under 28 U.S.C. § 2255 to a guilty plea was rejected. In *Marx,* the nature of the charges was explained in a plea agreement and by an assistant U.S. attorney in open court, and the defendant himself, under questioning by the court, said he was familiar with the elements and

12. The judge's failure to relate the facts to specific counts, combined with defense attorney Sacks's statement to the court that the guilty plea encompassed "one event" making it unnecessary for Stewart to plead to the individual counts, may well have confused Stewart. The prosecution's statement of the evidence included a statement that there was an armed robbery of the store and that the defendant left. After speaking with two black males he returned some time later and committed other acts (R.

73). It also raises potential questions, which this court need not address, of whether the defendant was improperly convicted and sentenced under Illinois law of multiple charges from a single act. *See People v. Dixon,* 91 Ill.2d 346, 351–52, 63 Ill.Dec. 442, 445–46, 438 N.E.2d 180, 183–84 (1982); *People v. Lilly,* 56 Ill.2d 493, 309 N.E.2d 1 (1974); *but see People v. Green,* 62 Ill.2d 146, 340 N.E.2d 9 (1975), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2635, 49 L.Ed.2d 379 (1976).

had discussed them previously with his counsel. *Id.* at 1252–53. In the present case, by contrast, none of those factual elements were present. Stewart was not questioned at all concerning the elements of the charges, did not receive any explanation of the charges, and did not enter into any plea agreement describing the nature of the charges.

■ Furthermore, the trial judge did not question Stewart concerning the voluntariness of his plea, but merely asked twice whether Stewart wanted to persist in his guilty plea. The plea transcript contains no information on the defendant's age, educational background,[13] occupation, mental capacity or other factors that might show Stewart's ability to understand words such as "obviate," "preclude," "stipulate," and others used in the proceedings. The judge did not ask Stewart if he had any history of psychiatric problems, or whether he was under the influence of any medicine, alcohol or narcotics. Stewart was also not asked whether anyone was exerting pressure upon him to plead guilty. Stewart acknowledged speaking briefly over the telephone with his mother and sister just before pleading guilty. There is no explanation, however, of the nature or effect of Stewart's conversation with his family members. There simply is no indication that the trial judge made a substantial effort during the plea proceeding to ensure that Stewart's plea was intelligent and voluntary. Under *Boykin*, 395 U.S. at 242–44, 89 S.Ct. at 1711–13, a silent record on this issue cannot pass constitutional muster. Therefore, the record does not adequately establish the voluntariness of Stewart's plea. Additionally, this court's finding is in accord with that of Justice Moran of the Illinois Supreme Court, who wrote in dissent when that court first upheld Stewart's conviction and sentence:

> I have scrupulously reviewed the record trying to discern any discourse that would indicate that the court ascertained that the defendant was voluntarily entering his guilty plea. The search proved

fruitless, revealing neither explicit dialogue concerning the voluntariness of the plea nor inferences that the plea was, indeed, being entered voluntarily.

*Stewart*, 101 Ill.2d at 498, 79 Ill.Dec. at 137, 463 N.E.2d at 691 (Moran, J., dissenting). The trial court's colloquy with Stewart was woefully inadequate on the voluntariness issue.

The judge did admonish Stewart concerning waiver of his right to a jury trial and related rights. The admonitions, though not fully compliant with Illinois Rule 402 paras. (a)(3) and (4), nonetheless satisfied the constitutional minimum concerning the rights Stewart was waiving. *Henry*, 933 F.2d at 559. Stewart was also advised repeatedly that he could face the death penalty despite his guilty plea, and therefore was informed of the maximum penalty for the murder charges. But he was not told of the mandatory minimum terms for murder: 20 years if sentence were imposed under Ill.Rev.Stat. ch. 38, § 1005–8–1(a)(1) (1979), or 40 years if an extended term were imposed under § 1005–8–2(a)(1) of the same chapter. The judge also failed to inform Stewart of either the minimum or maximum terms for attempted murder (6 to 30 years, §§ 8–4(c)(1), 1005–8–1(a)(3)) or armed robbery (4 to 15 years, §§ 18–2(b), 1005–8–1(a)(4), or 15 to 30 years for an extended term under § 1005–8–2(a)(3)).

■ The judge's failure to advise Stewart of the mandatory minimum term for murder, and the omission of both the minimum and maximum terms for attempted murder and armed robbery, may have given Stewart an unrealistic view of his options. He may have believed that the judge's sentencing discretion was substantially narrower or wider than was in fact the case. It is impossible to predict what effect any such misapprehension might have had on Stewart's decision to plead guilty. Certainly Stewart, a defendant with considerable experience with the crim-

---

**13.** The transcript of the change of plea hearing is 94 pages long. Defendant is quoted on 10 pages, all within the first 19 pages. He spoke only 39 words; the vocabulary consisted of 12 different words, only one of which had two syllables, that word being "Honor."

inal justice system,[14] knew he was facing a long prison term. Nonetheless, Stewart was entitled under Illinois Rule 402(a)(2) to know the minimum and maximum sentences he was facing for each of the charges remaining after some were dropped and others were amended.

A court's failure to advise a defendant of the mandatory minimum sentence would not alone be sufficient to invalidate a guilty plea. The Seventh Circuit has held that a judge's failure to advise a defendant pleading guilty to a non-captial drug offense that he faced a mandatory parole term, in addition to any prison term imposed, would not "inherently result in a complete miscarriage of justice." *Bachner v. United States*, 517 F.2d 589, 597 (7th Cir.1975). The mandatory parole term and the contingent effects it could have on the. defendant's sentence "are too remote from the considerations that may reasonably be expected to motivate a defendant's plea decision to be of legal significance." *Id.* As then-Judge Stevens observed in a concurring opinion in *Bachner:*

> On the fairness issue, I think the advice should be compared with the actual sentence rather than with a correct statement of the sentence that might properly have been imposed. As long as the actual sentence was less that the maximum as described in the judge's advice, I would find no unfairness—and certainly not any unfairness sufficiently grave to qualify as constitutional error.

*Id.* at 599 (Stevens, J., concurring). Unless the defendant received a sentence greater than the maximum of which he was advised during his guilty plea proceeding, there is no per se constitutional violation.

The Illinois Appellate Court has held that the omission of an admonition required by Rule 402, such as advising that a mandato-

ry supervised release period will apply, is "merely one factor" in assessing whether a guilty plea was voluntary and intelligent. *People v. Miller*, 107 Ill.App.3d 1078, 1086, 63 Ill.Dec. 712, 719, 438 N.E.2d 643, 650 (1st Dist.1982) (citing *People v. Robinson*, 82 Ill.App.3d 937, 38 Ill.Dec. 373, 403 N.E.2d 604 (1st Dist.1980)). In view of the other deficiencies in the guilty plea proceeding, the judge's failure to fully advise Stewart of the minimum and maximum potential penalties on some counts and only the maximum on others is relatively minor, but one that further undermines the validity of Stewart's guilty plea to capital crimes.

In sum, the court finds that Stewart's guilty plea violated his due process rights because the record does not affirmatively show that the plea was voluntary and intelligent. The judge did not adequately advise Stewart of the nature of the charges, did not question him regarding the facts of the case or his understanding of the charges, did not ask him whether he committed the acts he was accused of, did not question him regarding the voluntariness of his plea, and did not fully advise him of the applicable mandatory maximum and minimum sentences. Moreover, the few admonitions and questions that the judge directed at Stewart were spread over three disjointed segments of the plea proceeding. The lack of continuity works against the grain of a defendant's knowing, intelligent and voluntary relinquishment of his rights enroute to a death sentence. "Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it." *Boykin*, 395 U.S. at 240, 89 S.Ct. at 1710. Where, as here, a defendant entered a "blind" general guilty plea to the remaining counts of a confusingly amended information and received no discernible

---

**14.** The judge, in his sentencing remarks but not at the time of the hearing on the change of plea, noted that Stewart as a juvenile had been adjudged delinquent once for robbery and twice for armed robbery, and as an adult he had been convicted twice for burglary, twice for unlawful use of a weapon, and once for theft (R. 670–71). The many differences between experiences in the juvenile court and the adult court may argu-

ably be viewed as more confusing than elucidating in terms of one's understanding of procedural and substantive rights. This court notes that jury trials are not constitutionally required in juvenile proceedings, *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 1986, 29 L.Ed.2d 647 (1971), and no such right is provided under Illinois law. *See In re Fucini*, 44 Ill.2d 305, 255 N.E.2d 380 (1970).

**426**

benefit, questions will naturally arise over the voluntariness and intelligence of the plea. The record simply is inadequate to show that Stewart's plea was in fact voluntary and intelligent.

The trial judge unquestionably, but also the prosecutor and defense counsel, have a duty to ensure that defendants pleading guilty are accorded their full due process rights. With tempered zeal, counsel here did bring certain failings to the judge's attention. This duty is particularly important when a defendant's life is at stake, as in this case.[15] Normally, it will require a small amount of time, but a great deal of care, to properly admonish a defendant concerning a change of plea and to engage him in a sufficient colloquy to ensure his full understanding and free acceptance. The judge taking a plea of guilty must ensure an atmosphere in which the defendant will feel he may do more than utter "yes" or "yes sir" to confusing assertions or questions. Whether from indifference, confusion in the court file, ignorance or outright disdain, the trial judge failed to fulfill the requirements of the law in this case.

In view of the above finding that the petitioner's guilty plea is constitutionally invalid, the court finds it unnecessary to address the other challenges Stewart raises to his conviction and sentence.

The court finds, however, based on its review of the record, that Stewart would pose a danger to the public if released, and that dangerousness is an appropriate factor to consider in determining whether the immediate release of a successful habeas petitioner is warranted. *See Hilton v. Braunskill,* 481 U.S. 770, 777–78, 107 S.Ct. 2113, 2119–20, 95 L.Ed.2d 724 (1987). The State may therefore continue to detain Stewart pending further proceedings in his case.

## CONCLUSION

For reasons discussed above, the petitioner's application for writ of habeas corpus is granted. The court is aware of the

difficulties of trying a defendant when habeas relief is granted years after the state judgment was entered. Nevertheless, a judgment of guilt cannot rest on a plea of guilty unless it was knowing, intelligent and voluntary in a constitutional sense. Petitioner has the right to plead anew. If he pleads not guilty, he has the right to a trial. Unless Stewart is brought to trial within 120 days by the State of Illinois, the respondent shall release him.

IT IS SO ORDERED.

---

**15.** For views of judges, prosecutors, defense attorneys and others on the handling of death penalty cases, *see The Death Penalty: Personal Perspectives,* 22 Loy.U.Chi.L.J. 1, 14–63 (1990).